IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JULIE GORENC, KARA WINKLER, and MIDWIFE PARTNERS IN WOMEN'S WELLNESS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>JOANN KLAASSEN, RN, MN, JD, in her official capacity as the President of THE KANSAS STATE BOARD OF NURSING, et al.,<br><br>Defendants. | Case No. 18-2403-DDC-JPO |

## MEMORANDUM & ORDER

Before the court is defendants Adventist Health Mid-America, Inc. ("Adventist") and Susan Dahlin, Kathy Gaumer, Laura McMurray, and Lisa Pazdernik's (collectively the "Laborists") Motion to Dismiss (Doc. 15). The court concludes plaintiffs cannot advance a 42 U.S.C. § 1983 claim because the Laborists and Adventist are not state actors. And, the court exercises its discretion to decline supplemental jurisdiction over plaintiffs' state law claims against the Laborists and Adventist. The court thus grants the Motion to Dismiss (Doc. 15).

**I.    Background**

The court derives the following factual allegations from plaintiffs' Complaint (Doc. 1). Plaintiffs are midwives and hold active advanced practice registered nurse ("APRN") licenses issued by the Kansas State Board of Nursing ("KSBN"). Doc. 1 at 3 (Compl. ¶¶ 7–8). Under Kansas law, the KSBN is tasked with adopting standards, regulations, and professional requirements for APRNs. Kan. Stat. Ann. § 65-1130. Under regulations adopted by the KSBN,

APRNs must collaborate with a medical provider to treat patients. Doc. 1 at 7 (Compl. ¶ 36) (citing Kan. Admin. Regs. § 60-11-101(a)).[1]

Adventist is a Kansas corporation who owns and operates Shawnee Mission Medical Center Health ("SMMCH"). *Id.* at 4 (Compl. ¶ 12). Sometime in 2016, plaintiffs entered into a Collaborative Practice Agreement ("CPA") with Dr. Janetta Proverbs, permitting plaintiffs delivery privileges at SMMCH. *Id.* at 5 (Compl. ¶¶ 21–25). In late 2017 or early 2018, Dr. Proverbs informed plaintiffs that she would terminate the CPA, effective February 2018. *Id.* (Compl. ¶¶ 23–25).

Without a CPA with a physician employed or holding privileges at SMMCH, plaintiffs could not attend the deliveries of their clients at SMMCH. Plaintiffs sought a CPA with each of the Laborists, all of whom were Obstetrician/Gynecologists employed by SMMCH. *Id.* at 4–5 (Compl. ¶¶ 13–16, 26). The chief medical officer at SMMCH informed plaintiffs that each of the Laborists had refused to enter into a CPA with plaintiffs. *Id.* at 6 (Compl. ¶¶ 29–30). Plaintiffs suggest the Laborists would not enter a CPA because (1) entering into a CPA would conflict with the Laborists "financial self-interest," given that plaintiffs and the Laborists serve

---

[1] In pertinent part, the regulation provides:

(a) Each "advanced practice registered nurse" (APRN), as defined by [Kan. Stat. Ann.] 65-1113 and amendments thereto, shall function in an expanded role to provide primary, secondary, and tertiary heath care in the APRN's role of advanced practice. Each APRN shall be authorized to make independent decisions about advanced practice nursing needs of families, patients, and clients and medical decisions based on the authorization for collaborative practice with one or more physicians. This regulation shall not be deemed to require the immediate and physical presence of the physician when care is given by an APRN. Each APRN shall be directly accountable and responsible to the consumer.

(b) "Authorization for collaborative practice" shall mean that an APRN is authorized to develop and manage the medical plan of care for patients or clients based upon an agreement developed jointly and signed by the APRN and one or more physicians. Each APRN and physician shall jointly review the authorization for collaborative practice annually. . . .

Kan. Admin. Regs. § 60-11-101(a), (b).

the same, or at least similar, clientele; and (2) a CPA would have placed "time and energy" burdens on the Laborists. *Id.* at 9 (Compl. ¶¶ 51–53).

Plaintiffs allege Adventist adopted policies making it "burdensome on physicians" to enter into CPAs with APRNs such as plaintiffs. *Id.* at 6 (Compl. ¶ 31). Plaintiffs' Complaint accuses Adventist of "creat[ing] policies harming nurse-midwives" and "refus[ing] to create a policy or directive encouraging or mandating the Laborists—or any other physicians—grant a CPA." *Id.* (Compl. ¶ 32). Plaintiffs contend the policies enacted by Adventist, as well as the Laborists' refusal to enter into a CPA, deprived plaintiffs of "Constitutionally protected liberty and property interests" and caused them to miss 25 deliveries at SMMCH. *Id.* at 15–16 (Compl. ¶¶ 87–88).

Plaintiffs' Complaint includes two claims against Adventist and three claims against the Laborists. Count III alleges a 42 U.S.C. § 1983 claim against both the Laborists and Adventist. In this claim, plaintiffs contend the Laborists "willfully and maliciously deprived Plaintiffs of their liberty and property interests in practicing their chosen profession and in their freedom of contract." *Id.* at 23 (Compl. ¶ 130). And, plaintiffs contend, Adventist "exercise[d] control and influence" over the Laborists' decisions to not enter into a CPA with plaintiffs. *Id.* at 24 (Compl. ¶ 131). Count IV advances a state law claim for tortious interference with a contract against the Laborists based on plaintiffs' inability to perform contracts with their clients after they lost delivery privileges at SMMCH. *Id.* at 25–27 (Compl. ¶¶ 143–53). Count V makes a state law claim for tortious interference with a business expectancy against the Laborists and Adventist because these defendants, when they refused to enter into a CPA with plaintiffs, allegedly restricted the growth of plaintiffs' midwifery practice. *Id.* at 27–28 (Compl. ¶¶ 154–65).

The Laborists and Adventist moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiffs' claims. Doc. 15; Doc. 16 at 4–5. On the § 1983 claim, the Laborists and Adventist argue that (1) the Complaint fails to identify a federally protected right because none of their actions deprived plaintiffs of the opportunity to practice midwifery at hospitals other than SMMCH; (2) they are not state actors; and (3) if they are state actors, they are entitled to qualified immunity. Doc. 16 at 5–18. The Laborists and Adventist also argue that if the court dismisses the § 1983 claim, it could decline supplemental jurisdiction over the state law claims asserted in Counts IV and V. *Id.* at 18–19. But, if the court were to reach the merits of the state law claims, they argue plaintiffs' Complaint fails to allege facts capable of supporting a reasonable finding that the Laborists and Adventist acted maliciously or unjustifiably by refusing to enter into a CPA with plaintiffs.

Plaintiffs' Response primarily contends that it is unfair to allow a group of physicians—here, Obstetricians and Gynecologists—to exercise power to preclude midwives from practicing at a hospital of the midwives' choice. *See* Doc. 24 at 3–4 ("If no CPA is formed under the current rules, Adventist saves money and hassle, but Plaintiffs lose their legal rights and privileges. This is not equitable, fair or voluntary for Plaintiffs."), 9 ("However, each [Laborist] has their own state-issued license, and Adventist objects to the possibility that Adventist could be compelled to act based on Plaintiffs' financial interests. Clearly, Adventist understands the importance of prohibiting States from compelling one person to act based purely on the financial interests of another. Adventist should have realized that it would be wrong for them to do to others what they do not want done to them." (footnote omitted)). Plaintiffs contend this is so because physicians, such as the Laborists, can treat pregnant women without entering into a

4

CPA. Plaintiffs also argue the Laborists and Adventist, by restricting plaintiffs' ability to use their APRN licenses—have taken on the role of Kansas legislators.

## II.     Standard of Review

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the factual allegations in the complaint are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But this requirement does not extend to every assertion made in a complaint. The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The court also will grant a motion to dismiss if an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). And "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations,' a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but

ultimately unavailing one." *Id.* at 327 (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## III. Discussion

### A. Count III: § 1983 Claim

"A person acting under color of state law who 'subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.'" *Marin v. King*, 720 F. App'x 923, 934 (10th Cir. 2018) (quoting 42 U.S.C. § 1983). To state a viable § 1983 claim upon which relief may be granted, plaintiffs must allege facts supporting two elements: (1) that plaintiffs "have been deprived of a right secured by the Constitution and the laws of the United States" and (2) "that defendants deprived them of this right acting under color of any statute of the state." *Johnson v. Rodrigues*, 293 F.3d 1196, 1202 (10th Cir. 2002) (brackets omitted) (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978)). Failing to allege facts capable of sustaining either element dooms a § 1983 claim. *Id.* A court, when resolving a dispositive motion, need not determine if plaintiffs were deprived of a recognized right before it evaluates whether the alleged deprivation occurred under color of state law. *See id.* (assuming plaintiffs had satisfied the first element and focusing analysis on whether defendants were state actors). The court proceeds to the question whether the Laborists and Adventist acted under color of state law.

"The traditional definition of acting under color of state law requires that the defendant in a 42 U.S.C. § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Marin*, 720 F. App'x at 934 (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)). "Liability under § 1983 can

6

extend beyond officers employed by the state as 'private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of § 1983.'" *Id.* (brackets omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Likewise, "[p]rivate individuals and entities may be deemed state actors . . . if they have 'acted together with or have obtained significant aid from state officials, or if their conduct is otherwise chargeable to the state.'" *Johnson*, 293 F.3d at 1202 (brackets omitted) (quoting *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)).

Four tests help the court determine whether it should deem a private party a state actor in the context of a § 1983 claim. They are: "(1) the public function test, (2) the nexus test, (3) the symbiotic relationship test and (4) the joint action test." *Id.* (citing *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995)). The Laborists and Adventist argue they do not qualify as state actors under any of the four tests. Plaintiffs, in response, make arguments under the public function test and the symbiotic relationship test. Doc. 24 at 12–14.

### 1. Public Function Test

"The public function test consists of determining whether the state has delegated to a private party 'a function traditionally *exclusively reserved* to the States.'" *Johnson*, 293 F.3d at 1203 (emphasis added) (quoting *Gallagher*, 49 F.3d at 1447). "While many functions have been traditionally performed by governments, very few have been 'exclusively reserved to the State.'" *Id.* (quoting *Flagg Bros., Inc.*, 436 U.S. at 158). Examples of functions exclusively reserved to the state include "administering elections of public officials, operation of a company-owned town, and the management of a city park." *Gallagher*, 49 F.3d at 1456 (citation omitted). In contrast, the Circuit's cases identify some functions not exclusively reserved to the state: educating children; enforcing a statutory lien by a private party; and providing security at a

7

building leased from a state institution. *Id.* Also, the Tenth Circuit has concluded that a doctor's decision to involuntarily commit a person in accord with authority granted by state statute did not convert the doctor into a state actor under the public function test. *Wittner v. Banner Health*, 720 F.3d 770, 776–77 (10th Cir. 2013) (citing *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996)). As these examples demonstrate, the "exclusively reserved" standard is "an arduous standard to satisfy." *Johnson*, 293 F.3d at 1203.

Plaintiffs contend that the Laborists and Adventist, by not entering into a CPA with plaintiffs, performed a function reserved to the Kansas legislature because their refusal placed them in the business of establishing requirements for APRN licensure and practice. Doc. 24 at 12–13. This argument makes little sense, for it contradicts the allegations in the Complaint. Notably, when they filed their Complaint—an event well after the Laborists declined to enter into a CPA and plaintiffs lost delivery privileges at SMMCH—plaintiffs continued to hold APRN licenses and remained legally authorized to seek midwifery practice opportunities in Kansas. Doc. 1 at 3 (Compl. ¶¶ 7–8).

Instead of regulating licensing and the capacity to provide APRN services in Kansas, the allegations against Adventist suggest it created internal policies to supervise APRNs at its private SMMCH facility. And, the Complaint, alleges the Laborists declined to enter into a working agreement with plaintiffs—an agreement that would have required the Laborists to undertake supervisory functions over plaintiffs' practice. But creating internal polices for a private hospital and supervising APRNs are not functions typically performed by the state. To be sure, these are not functions exclusively reserved to the state. In fact, the typical role of the state in these functions is far less substantial than the state's role in educating children and confining the mentally ill, two functions, the Tenth Circuit has recognized, do not convert a private actor into a

state actor under the public function test. *Witner*, 720 F.3d at 776–77; *Gallagher*, 49 F.3d at 1456.

To explain the unusual position adopted by the plaintiffs' argument, the court provides the following hypothetical. Imagine a teenager who passes her driver's test and complies with all state-mandated requirements for acquiring a driver's license. The teenager attends college and, in her sophomore year, goes car shopping. Lacking sufficient funds to buy a car, the teenager tries to lease a car. Although the teenager finds a car she would like to lease, the car dealership declines to offer her a lease agreement. No one can doubt that the dealership's decision not to offer a lease agreement will impair the teenager's ability to maximize her freedom by using her driver's license to travel. It prevents her from having access to a specific car. And self-interest may have motivated the car dealership's decision. But the car dealership's decision not to offer the teenager a lease neither imposed a new requirement for acquiring a driver's license nor revoked the teenager's existing right to hold a driver's license. And, just as the car dealership in this example did not act under color of state law or perform a function exclusively reserved to the state, the Laborists, and by extension, Adventist, did not act under color of state law by declining to enter into an agreement with plaintiffs after they had concluded that the agreement was not beneficial to their interests.

For the foregoing reasons, the court rejects plaintiffs' argument that the Laborists and Adventist are state actors under the primary function test.

2. **Symbiotic Relationship Test**

Under the symbiotic relationship test, when "the state 'has so far insinuated itself into a position of interdependence' with a private party 'it must be recognized as a joint participant in the challenged activity.'" *Gallagher*, 49 F.3d at 1451 (quoting *Burton v. Wilmington Parking*

9

*Auth.*, 365 U.S. 715, 725 (1961)). A symbiotic relationship often exists where there is a "public-private relationship" and "the private and public actors have sufficiently commingled their responsibilities." *Wittner*, 720 F.3d at 778. As the test's name suggests, a symbiotic relationship exists when both the private party and the state benefit from an action. *Johnson*, 293 F.3d at 1204–05; *see also Gallagher*, 49 F.3d at 1451 (noting Supreme Court found symbiotic relationship where arrangement between state and private party "conferred a variety of mutual benefits on each party"). But, "extensive state regulation, the receipt of substantial state funds, and the performance of important public functions do not necessarily establish the kind of symbiotic relationship between the government and a private entity that is required for state action." *Id.* at 1204 (quoting *Gallagher*, 49 F.3d at 1451). And, "a private party's mere invocation of state legal procedures [does not] constitute[] joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law." *Id.* at 1205 (alterations in original) (quoting *Lugar*, 457 U.S. at 939 n.21).

Advancing their symbiotic relationship test argument, plaintiffs never have identified the benefit that the state purportedly receives from physicians refusing to enter CPAs with APRNs. *See* Doc. 24 at 13–14. This omission likely spells the end for their theory that the Laborists and Adventist are state actors under the symbiotic relationship test.

But, more to the point, the omission in plaintiffs' argument is understandable. Based on the facts alleged in the Complaint and the court's review of Kansas's regulatory framework for APRNs, the only reasonable inference is that a physician's refusal to enter CPAs with APRNs conflicts with the objectives of the Kansas legislature and the KSBN. As plaintiffs point out, "many states have come to depend on [APRNs] for basic health care." *Id.* at 14. The Kansas legislature, when it enacted Section 65-1130 of the Kansas Statutes Annotated and permitted

licensing of APRNs, appears to have recognized the potential role APRNs play in the medical profession. The Laborists' decision not to enter a CPA with plaintiffs does not advance this goal. Instead, if anything, that decision conflicts with the goal of the Kansas legislature.

It also appears to the court that the physicians not entering into CPAs would hinder the interests of the KSBN. APRNs must renew their licenses every two years. Kan. Stat. Ann. § 65-1117. And, to renew their licenses, APRNs must pay a fee to the KSBN. Kan. Stat. Ann. § 65-1118. The KSBN, aside from any altruistic or aspirational reasons for promoting APRNs, has a monetary incentive to develop regulations under which APRNs can provide services and succeed. But, if physicians refuse to enter CPAs with APRNs, APRNs will have fewer opportunities to practice and less incentive to renew their licenses.

Plaintiffs fail to establish a central component of the symbiotic relationship test because they neither offer any arguments for how the state benefits from physicians refusing to enter into CPAs with APRNs nor plead any allegations capable of supporting the proposition that the state receives a benefit from physicians refusing to enter into CPAs.[2]

### 3. Conclusion

To advance a § 1983 claim, a plaintiff must allege facts capable of supporting a finding that defendants acted under color of state law. Plaintiffs have not done so. Their arguments about the public function test and the symbiotic relationship test are unpersuasive. The court thus dismisses plaintiffs' § 1983 claim against the Laborists and Adventist.

---

[2] In reaching this conclusion, the court recognizes plaintiffs' allegations that the Laborists and Adventist relied on the CPA requirement placed on APRNs by Section 60-11-101(a) of the Kansas Administrative Regulations to box plaintiffs out of the midwifery practice at SMMCH. But, as *Johnson* states, "a private party's mere invocation of state legal procedures [does not] constitute[] joint participation or conspiracy with state officials satisfying the § 1983 requirement of action under color of law." 293 F.3d at 1205 (alterations in original) (quoting *Lugar*, 457 U.S. at 939 n.21).

### B. Counts IV & V: State Law Claims

The Laborists and Adventist argue that if the court dismisses the § 1983 claim, it should decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Doc. 16 at 18. Plaintiffs' Response never addresses this argument. *See* Doc. 24 at 18–20 (plaintiffs' Response discussing state law claims but not addressing supplemental jurisdiction).

Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction." 28 U.S.C. § 1367(a). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). "When the single federal-law claim in [an] action [is] eliminated at an early stage of the litigation, the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988). In deciding whether to exercise supplemental jurisdiction, a court also considers if the state law claims "raise[] a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1).

The case against the Laborists and Adventist is at an early stage in the litigation. The state law claims also raise a novel theory in that they seek to impose liability on a private party for declining to enter into a contract with other private parties. Addressing this theory and the arguments for dismissing the state law claims appears to require interpretation of a state statute and a state administrative regulation. And, in seeking dismissal of the state law claims, the Laborists and Adventist also raise a public policy argument. Doc. 16 at 22. For these reasons,

the court declines to exercise supplemental jurisdiction over Counts IV and V of plaintiffs' Complaint, as against the Laborists and Adventist.[3]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Adventist and the Laborists' Motion to Dismiss (Doc. 15) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court is directed to terminate Adventist, Susan Dahlin, Kathy Gaumer, Laura McMurray, and Lisa Pazdernik as defendants in this action.

**IT IS SO ORDERED.**

**Dated this 1st day of August, 2019, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**

---

[3] The plaintiffs' ongoing federal-law claims against other defendants in this matter do not preclude the court from declining supplemental jurisdiction over the state law claims against the Laborists and Adventist. *See Medlin v. City of Algood*, 355 F. Supp.3d 707, 719 (M.D. Tenn. 2019) (collecting cases and stating "there is a strong presumption in favor of declining to exercise jurisdiction over supplemental state-law claims after dismissing federal anchor claims. This holds true even where, as here, federal claims remain against other defendants" (citation and internal quotation marks omitted)).