## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JULIE GORENC, KARA WINKLER, and
MIDWIFE PARTNERS IN WOMEN'S
WELLNESS, LLC,

        Plaintiffs,

v.

                                          Case No. 18-2403-DDC-JPO

JOANN KLAASSEN, RN, MN, JD, in her official
capacity as the President of THE KANSAS
STATE BOARD OF NURSING, et al.,

        Defendants.

## MEMORANDUM AND ORDER

Before the court is defendant JoAnn Klaassen, RN, MN, JD's Motion to Dismiss (Doc.

11). Defendant Klaassen is sued in her official capacity as President of the Kansas State Board

of Nursing. She moves for dismissal under Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6).[1] *See* Docs. 11, 12. For reasons explained below, the court grants defendant Klaassen's

Motion to Dismiss.

## I.      Background

The court takes the following facts from plaintiffs' Complaint (Doc. 1) and views them in

the light most favorable to plaintiffs. *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)

(explaining that the court must "accept as true all well-pleaded factual allegations in the

complaint and view them in the light most favorable to the [plaintiff]" (citation and internal

quotation marks omitted)).

---

[1] Defendant Klaassen initially sought dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5). *See* Docs. 11, 12. But, defendant withdrew those arguments when plaintiffs later served defendant properly. *See* Doc. 14.

Julie Gorenc and Kara Winkler are nurse-midwives holding active advance practice registered nurse ("APRN") licenses issued by the Kansas State Board of Nursing ("KSBN"). Doc. 1 at 3 (Compl. ¶¶ 7–8). Ms. Gorenc and Ms. Winkler practice through Midwife Partners in Women's Wellness, LLC, a Kansas limited liability company ("Midwife Partners in Women's Wellness," and together with Ms. Gorenc and Ms. Winkler, "plaintiffs"). Doc. 1 at 3 (Compl. ¶ 9). Plaintiffs sue defendant Klaassen in her official capacity as President of KSBN, referring to defendant throughout the Complaint as "KSBN" because "a suit against an official is treated as a suit against the entity." *Id.* at 3 (Compl. ¶ 10).[2]

KSBN and Adventist Health Mid-America, Inc. ("Adventist") required plaintiffs to have a collaborative practice agreement (a "CPA") with a private physician as a condition to attending births at Shawnee Mission Medical Center Health ("SMMCH"). *Id.* at 5 (Compl. ¶ 22). Sometime in 2016, plaintiffs entered into a CPA with Dr. Janetta Proverbs, also a defendant in this case, permitting plaintiffs delivery privileges at SMMCH. *Id.* (Compl. ¶¶ 21–25). Dr. Proverbs informed plaintiffs that she would terminate the CPA, effective February 2018. *Id.* (Compl. ¶¶ 23–25). Plaintiffs sought CPAs with other OB/GYNs[3] employed at SMMCH without avail. *Id.* at 5 (Compl. ¶¶ 26–30). Without a CPA with a physician employed or holding

---

[2] One of defendant's arguments for dismissal is that plaintiffs need to join KSBN and/or the other ten board members of KSBN in addition to defendant Klaassen because the relief requested requires KSBN action, which Ms. Klaassen could not provide alone. Doc. 12 at 11–12. Plaintiffs assert that they did not add the other board members because it "would be duplicative and repetitive" and "not alter the relief requested." Doc. 1 at 17 (Compl. ¶ 97). Plaintiffs note that if the other board members are required they will amend the Complaint to include them. Doc. 19 at 8. The court does not address defendant Klaassen or plaintiffs' arguments in detail here because, as discussed *infra*, the court finds it lacks subject matter jurisdiction over Count I and that plaintiffs have failed to state a claim upon which relief can be granted for Count II. The court refers to KSBN at times throughout this Order, rather than defendant Klaassen, as plaintiffs' claims set forth in their Complaint refer to and are asserted against "KSBN."

[3] Adventist and these OB/GYNs were also listed as defendants in this case. But, the court granted their Motion to Dismiss and terminated them as defendants on August 1, 2019. *See* Doc. 35.

privileges at SMMCH, plaintiffs could not attend the deliveries of their clients at SMMCH, causing clients to leave plaintiffs' practice. *Id.* at 16 (Compl. ¶¶ 33–34).

Under Kansas law, KSBN is charged with adopting standards, regulations, and professional requirements for APRNs. Kan. Stat. Ann. § 65-1130(c)(1), (c)(3) (the board of nursing "shall adopt rules and regulations applicable to [APRNs]" which "establish roles . . . of [APRNs] which are consistent with nursing practice specialties recognized by the nursing profession" and which "define the role of [APRNs] and establish limitations and restrictions on such role"). Kan. Stat. Ann. § 65-1130(d) states APRNs "*may* prescribe drugs *pursuant to a written protocol as authorized by a responsible physician*" provided that "[i]n no case shall the scope of authority of the advanced practice registered nurse exceed the normal and customary practice of the responsible physician" (emphasis added). A "responsible physician" is "a person licensed to practice medicine and surgery in Kansas who has accepted responsibility for the protocol and the actions of the [APRN] when prescribing drugs." Kan. Stat. Ann. § 65-1130(d). Kan. Stat. Ann. § 65-1130(g) provides that APRNs "certified in the role of certified nurse-midwife and engaging in the independent practice of midwifery under the independent practice of midwifery act with respect to prescribing drugs shall be subject to the provisions of the independent practice of midwifery act and shall not be subject to the provisions of this section."

Under regulations adopted by KSBN, APRNs are authorized to "make independent decisions about advanced practice nursing needs of families, patients, and clients." Kan. Admin. Regs. § 60-11-101(a). APRNs may also make "medical *decisions based on the authorization for collaborative practice with one or more physicians*." *Id.* (emphasis added). The regulation defines "Authorization for collaborative practice" to mean "that an APRN is authorized to develop and manage the medical plan of care for patients or clients based upon an agreement

3

developed jointly and signed by the APRN and one or more physicians." Kan. Admin. Regs. § 60-11-101(b).[4]  Under the regulations, "physician" is defined as "a person licensed to practice medicine and surgery by the state board of healing arts."  Kan. Admin. Regs. 60-11-101(c).

Plaintiffs assert that Kan. Admin. Regs. § 60-11-101 delegates to private physicians the "authority to define each, individual APRN's legal privileges," violating Article 2, §1 of the Constitution of the State of Kansas.  Doc. 1 at 7–10 (Compl. ¶¶ 37–43, 57–59).  Plaintiffs contend that the Kansas Legislature delegated authority to KSBN to enact regulations establishing the roles of APRNs "consistent with nursing practice specialties recognized by the nursing profession."  *Id.*  And, they argue, by promulgating Kan. Admin. Regs. § 60-11-101, KSBN has further delegated that legislative power to private physicians, *i.e.*, by allowing APRNs and physicians to enter into collaborative practice agreements that expand an APRNs role to include making medical decisions.  *Id.*  Plaintiffs argue this violates the nondelegation doctrine in the Kansas Constitution.  *Id.*  And, plaintiffs allege Kan. Stat. Ann. § 65-1130 and Kan. Admin. Regs. §60-11-101 do not set any standards governing a physician's decision to grant or deny a CPA or what can be included in it, other than it cannot "'exceed the normal and customary practice of the responsible physician.'"  Doc. 1 at 8 (Compl. ¶ 43) (quoting Kan. Stat. Ann. § 65-1130(d)).

Plaintiffs also allege that the defendants have "deprived [p]laintiffs of their liberty and property interests in contracting and practicing their chosen profession without due process of law."  Doc. 1 at 1 (Compl. ¶ 3); *see also id.* at 15–17, 21 (Compl. ¶¶ 17–18, 87, 92–94, 121–122)

---

[4]      Kan. Admin. Regs. § 60-11-105 provides additional detail about the functions of APRNs, like plaintiffs, practicing as nurse-mid-wives.  It similarly provides in pertinent part that such APRNs may "develop and manage the medical plan of care for patients or clients, based on the authorization for collaborative practice."  Kan. Admin. Regs. § 60-11-105(b).

(alleging a property and liberty interest in "practicing in their chosen profession free from unreasonable restraint," "a liberty interest in entering into private contracts," impairment of plaintiffs' "freedom to contract," and damage to plaintiffs' reputation). Plaintiffs allege that the collaborative practice statute (§ 65-1130) and regulation (§ 60-11-101) do not have necessary language setting out specific standards for CPAs between physicians and APRNs, letting plaintiffs' competitors—the private physicians—determine what each APRN can and cannot do. Doc. 1. at 5, 8 (Compl. ¶¶ 43, 51–52). Instead, plaintiffs assert KSBN should pass rules of general applicability that will apply to all APRNs, without physician involvement. *Id.* (Compl. ¶¶ 44–45, 59). In connection with the alleged violation of the Kansas Constitution by giving legislative power to physicians, plaintiffs contend that delegating authority to private physicians violates plaintiffs' substantive and procedural due process rights, as they should be entitled to the same procedural protections before revocation of a CPA as they would be entitled to before revocation of their APRN licenses. *See id.* at 1, 8–11 (Compl. ¶¶ 1, 47–62). Plaintiffs also appear to assert that they should be entitled to such procedural protections any time a physician is asked to collaborate but declines to enter into a CPA with an APRN. *See* Doc. 1 at 10, 14–15 (Compl. ¶ 54–56, 82–86).

Plaintiffs next allege an equal protection violation. This theory asserts that KSBN should expand the definition of nursing to include acts like prescribing drugs, regardless whether a CPA is in place, as such acts are "consistent with nursing practice specialties recognized by the nursing profession." *Id.* at 11–14 (Compl. ¶¶ 63–80). By including prescriptive authority in the statutes and regulations under some circumstances (*i.e.*, "pursuant to a written protocol as authorized by a responsible physician" under Kan. Stat. Ann. § 65-1130(d)), and by teaching diagnosis and prescription in Kansas universities' APRN programs, plaintiffs contend the Kansas

Legislature "could not have rationally believed the public would be protected by legislation that arbitrarily limited the nursing profession to less than what APRNs are safe, competent and trustworthy to provide." *Id.* at 13 (Compl. ¶¶ 73–76). Plaintiffs assert that they should not be limited in their ability to perform such acts only to circumstances where they have a CPA with a physician (*i.e.*, they should be able to choose to work independently and still retain the ability to perform the acts APRNs with CPAs are permitted to perform). *Id.* at 11–14 (Compl. ¶¶ 63–80). Their position is that prescription should fall within the general definition of nursing. *Id.* at 13 (Compl. ¶ 14). And so, they argue KSBN's "definition" of nursing under the Kansas statutes and regulations is "arbitrary" with "no rational relationship to any legitimate government interest." *Id.* at 13–14 (Compl. ¶ 79). Likening the collaborate practice statutes and regulations to the "separate but equal" treatment addressed in *Brown v. Board of Education*, 347 U.S. 483 (1954), plaintiffs allege "legislative limitations on nursing . . . are now demonstrably false and arbitrary." *Id.* at 14. (Compl. ¶ 80).

## II.     Legal Standards

Defendant Klaassen asserts three main reasons to dismiss plaintiffs' claims against her: (1) KSBN is entitled to immunity under the Eleventh Amendment to the U.S. Constitution, (2) plaintiffs have not presented a justiciable case or controversy or demonstrated that they have standing to assert their claims against KSBN, and (3) the Complaint does not state a plausible claim for relief under 42 U.S.C. § 1983.[5] Defendant thus moves to dismiss plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[5]     Defendant Klaassen also argues that KSBN lacks capacity to be sued as a matter of state law. As explained below, the claims against KSBN itself are barred under the Eleventh Amendment's guarantee of sovereign immunity and thus the court does not address defendant Klaassen's capacity arguments separately.

## A.    Rule 12(b)(1)

Under Rule 12(b)(1), a defendant may move to dismiss for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction."  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citation omitted).  Federal district courts have original jurisdiction over all civil actions arising under the constitution, laws, or treaties of the United States or where there is diversity of citizenship.  28 U.S.C. §§ 1331–32.  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted).  Since federal courts are courts of limited jurisdiction, the party invoking federal jurisdiction bears the burden to prove it exists.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Kinney v. Blue Dot Servs.*, 505 F. App'x 812, 814 (10th Cir. 2012) (explaining that the "court may not assume that a plaintiff can establish subject matter jurisdiction; it is the plaintiff's burden to prove it").

Generally, a Rule 12(b)(1) motion to dismiss consists of either a facial attack or a factual attack.  *Davenport v. Wal-Mart Stores, Inc.*, No. 14-2124-JAR-JPO, 2014 WL 3361729, at *1 (D. Kan. July 9, 2014).  The Tenth Circuit has explained the difference between the two:

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.  *Id.* Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).

*Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citations omitted).

**B.      Rule 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failing to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained,  "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the factual allegations in the complaint are true.  *Id*.  But this requirement does not extend to every assertion made in a complaint.  The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678).  Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)). Essentially, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). This plausibility standard reflects the requirement in Federal Rule of Civil Procedure 8 that pleadings must provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191–92 (10th Cir. 2012).

## III. Analysis

Plaintiffs seek declaratory and injunctive relief against KSBN under 28 U.S.C. § 2201 and 42 U.S.C. § 1983. Doc. 1 at 17–23. In Count I, plaintiffs assert that Kan. Admin. Regs. § 60-11-101(a), improperly delegates the authority to define the role of an APRN to private physicians. *Id.* at 17–19 (Compl. ¶¶ 96–110). Plaintiffs maintain that KSBN is tasked with adopting rules and regulations defining the role of APRNs under Kan. Stat. Ann. § 65-1130 and by further delegating that authority to private physicians, KSBN has violated the separation of powers doctrine under the Kansas Constitution. *Id.* Plaintiffs ask the court to make certain declarations with respect to Kan. Stat. Ann. § 65-1130 and Kan. Admin. Regs. § 60-11-101(a), including that:

- Kan. Stat. Ann. § 65-1130 "directs the KSBN to define the roles and limits of APRN practice" in a manner "'consistent with nursing practice specialties recognized by the nursing profession.'" Doc. 1-1 at 19.

- Kan. Stat. Ann. § 65-1130 "does not permit delegation of legislative authority over APRNs to private physicians" or that Kan. Stat. Ann. § 65-1130(d) is unconstitutional and void "because it delegates legislative authority to individual private physicians." *Id.*

- Kan. Admin. Regs. § 60-11-101(a) is unconstitutional and void "because it delegates legislative authority to individual private physicians." *Id.*

Plaintiffs also seek injunctions that (a) prohibit KSBN from enforcing Kan. Admin. Regs. § 60-11-101 or requiring plaintiffs to secure CPAs, (b) order KSBN to adopt new rules and regulations replacing Kan. Admin. Regs. § 60-11-101 that define the roles and limits of APRNs "consistent with nursing practice specialties recognized by the nursing profession," and (c) adopt such rules within 15 days. *Id.* at 19 (Compl. ¶ 110).

In Count II, plaintiffs assert that the CPA requirement violates the Due Process Clause and the Equal Protection Clause of the Fourteenth Amendment. Doc. 1 at 20–23 (Compl. ¶¶ 111–127). They argue that the collaborative practice statutes and regulations are overly vague, "lack sufficient definiteness and specificity to inform those who may be subject to the law [how] to avoid violating the law," and do not provide enough detail for an APRN to know what to do "to obtain authority to practice." Doc. 1 at 20. (Compl. ¶ 113). Because the provisions are vague and do not say "what facts or factors a physician can, should or must consider when granting [p]laintiffs authority to practice in their chosen profession[,]" plaintiffs allege they "allow for and have resulted in arbitrary, inconsistent and discriminatory enforcement" by

KSBN.  Plaintiffs allege the collaborative practice provisions "deprive[] APRNs, like [p]laintiffs, of legal authority to perform acts Kansas" knows (i) "are consistent with nursing practice specialties recognized by the profession" and (ii) APRNs "are safe, competent and trustworthy to provide."  *Id.* at 21 (Compl. ¶ 117).  By allowing a CPA with a physician to define what plaintiffs can and cannot do, instead of KSBN setting the standards by regulation with a review process by KSBN, plaintiffs assert that they are deprived of their due process and equal protection rights.  *Id.* at 21–22 (Compl. ¶¶ 119–124).  The rights deprived are alleged to include "rights to liberty and property in their profession," and a fundamental right of a "liberty interest in . . . enforce[ing] private contracts" with plaintiffs' clients.  *Id.* at 21 (Compl. ¶¶ 121–122).  Plaintiffs seek the same declaratory and injunctive relief as Count I, plus a declaration that Kan. Stat. Ann. § 65-1130 and Kan. Admin. Regs. § 60-11-101 violate the Due Process Clause and the Equal Protection Clause of the United States Constitution.  *Id.* at 22–23 (Compl. ¶ 127).

When this court's jurisdiction over a claim is in question, the jurisdictional issue is a threshold matter that the court must resolve before reaching other matters that may dispose of claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  So, the court first addresses defendant Klaassen's arguments for dismissal because she (and KSBN) are entitled to immunity under the Eleventh Amendment to the U.S. Constitution.  Next, the court addresses defendant Klaassen's assertion that plaintiffs have not presented a justiciable case or controversy or demonstrated standing for their claims.  Finally, the court turns to defendant Klaassen's arguments for dismissal for failure to state a claim upon which relief can be granted.

## A.    Eleventh Amendment Sovereign Immunity

Defendant moves for dismissal based on Eleventh Amendment sovereign immunity. Doc. 12 at 27–31.

### i. Sovereign Immunity of States and Arms of the State

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages." *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted). "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

Sovereign immunity under the Eleventh Amendment also "extends to arms of the state and to state officials who are sued . . . in their official capacity." *Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, 561 F. App'x 661, 665 (10th Cir. 2014) (citing *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013)); *see also Jones v. Office of Admin. Hearings*, No. 18-2173, 2018 WL 3524743, at *2 (D. Kan. July 23, 2018) (citing *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Ass'n*, 450 U.S. 147, 150 (1981)) (noting the immunity provided under the Eleventh Amendment "applies equally to state agencies" and "it applies to state officials acting in their official capacities because courts interpret a suit against an individual official as a suit against the official's office"). But, three exceptions to Eleventh Amendment sovereign immunity exist:

First, a state may consent to suit in federal court. Second, Congress may abrogate a state's sovereign immunity by appropriate legislation when it acts under Section 5 of the Fourteenth Amendment. Finally, under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief.

*Id.* (quoting *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012)).

Here, defendant Klaassen is sued in her official capacity as the President of KSBN and plaintiffs appear to assert their claims against defendant Klaassen in an effort to sue KSBN itself. *See* Doc. 1 at 3 (Compl. ¶ 10) (referring to defendant Klaassen as "KSBN" throughout the Complaint because "a suit against an official is treated as a suit against the entity"); *see also Turner v. Nat'l Council of State Bds. of Nursing, Inc.*, No. 11-2059-KHV, 2012 WL 1435295, at *8 (D. Kan. Apr. 24, 2012) ("Further, in all respects other than name, an official-capacity suit is a suit against the entity." (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). KSBN is a state agency and considered an arm of the state. *See Turner*, 561 F. App'x at 668 (upholding the district court's determination that Kansas had not abrogated Eleventh Amendment immunity for plaintiff's claims against KSBN and its members); *see also* Doc. 1 at 3 (Compl. ¶ 10) (noting that KSBN is a statutory entity created by Kan. Stat. Ann. § 74-1106 *et seq.* and "an agency of the state of Kansas").

Plaintiffs do not contend that the State of Kansas has waived its Eleventh Amendment immunity or consented to suit under the first exception.[6] Plaintiffs also do not argue that

---

[6] Indeed, "[t]he State of Kansas has not waived immunity for a state agency or officials of that agency as applied to claims under 42 U.S.C. § 1983." *Jones*, 2018 WL 3524743, at *2 (citing *Gilbert v. Kansas*, No. 02-4164-SAC, 2003 WL 21939772, at *1 (D. Kan. July 17, 2003)). Under Kan. Stat. Ann. § 65-1121a, "[a]ny agency action of the board of nursing pursuant to the Kansas nurse practice act is subject to review in accordance with the Kansas judicial review act." The Kansas Act for Judicial Review, Kan. Stat. Ann. §§ 77-601–623, "establishes the exclusive means of judicial review of agency action" and provides "that the [state] district court shall conduct review except when . . . otherwise provided by law." Kan. Stat. Ann. §§ 77-606, 77-609. Though Kansas may have authorized suits against KSBN in state court, the court does not find Kansas has expressly consented to suit in federal court, and thus the court cannot infer a waiver of sovereign immunity. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1195 (10th Cir. 1998).

Congress has abrogated state sovereign immunity here.[7]  Instead, plaintiffs argue that the third

exception to Eleventh Amendment sovereign immunity —the *Ex parte Young* exception—

applies because they are seeking prospective declaratory and injunctive relief against KSBN to

prevent "violations of [p]laintiffs['] constitutionally protected rights."  Doc. 1 at 3 (Compl. ¶ 10).

The *Ex parte Young* exception "does not apply to suits against the States and their

agencies, which are barred regardless of the relief sought."  *Turner*, 2012 WL 1435295, at *15;

*see also Lee v. McManus*, 589 F. Supp. 633, 638 (D. Kan. 1984) ("Actions commenced pursuant

to 42 U.S.C. § 1983 cannot be brought against the State of Kansas or any state agencies since the

state is not a person within the meaning of the Eleventh Amendment to the United States

Constitution.").  Rather, it applies to "suits seeking declaratory or injunctive relief against *state

officials*" because if such officials are "engaging in unconstitutional conduct, [they] lose their

official representative character and can be held accountable for their individual conduct."  *Lee*,

589 F. Supp. at 637.  Thus, the Eleventh Amendment's guarantee of sovereign immunity applies

to the extent plaintiffs assert any claims against KSBN.  *Turner*, 561 F. App'x at 663.

Because plaintiffs' claims against KSBN itself are barred by the Eleventh Amendment's

guarantee of sovereign immunity, the court, below, only examines whether plaintiffs have

asserted claims against defendant Klaassen in her official capacity that meet the *Ex parte Young*

exception.  *See Jones*, 2018 WL 3524743, at *2.

### ii.  The *Ex Parte Young* Exception for Claims Against State Officials

For reasons explained below, the court finds that plaintiffs' Count I claims are barred by

the Eleventh Amendment's guarantee of sovereign immunity.  And, plaintiffs' Count II claims

asserted against defendant Klaassen, if the other KSBN board members were added to this suit,

---

[7]        "It is well-established . . . that § 1983 does not abrogate a state's Eleventh Amendment immunity."  *Murray v. Colorado*, 149 F. App'x 772, 774 (10th Cir. 2005).

could meet the *Ex parte Young* exception.  But, as explained, *infra*, Part III.C, plaintiffs fail to state claims upon which relief can be granted in Count II, so allowing amendment to add the additional board members would prove futile.

      *Ex parte Young* held that "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself."  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (citing *Ex parte Young*, 209 U.S. at 159–60).  The exception exists because "when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes."  *Turner*, 561 F. App'x at 668 (internal citations and quotations omitted).  To determine if "'the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Id.* (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).  This inquiry does "not include an analysis of the merits of the claim."  *Verizon*, 535 U.S. at 637.

      The *Ex parte Young* exception is narrow.  *Turner*, 2012 WL 1435295, at *15.  To qualify for the exception, plaintiffs must show (1) an ongoing violation of *federal* law and (2) that they seek prospective relief only, "not a declaration that a state officer has violated plaintiff's rights in the past."  *Id.* (citations omitted) (emphasis added); *see also Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (finding that without an ongoing violation of federal law, a suit against a state officer should be treated as a suit against the state entitled to sovereign immunity).  For the exception to apply, the state officer must have "'some connection with enforcement of the act.'"

*Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (quoting *Ex parte Young*, 209 U.S. at 157). Plaintiffs "must adequately allege the individual official's duty to enforce the statute in question and a demonstrated willingness to do so." *Barrett v. Univ. of N.M. Bd. of Regents*, 562 F. App'x 692, 694 (10th Cir. 2014); *see also Edmondson*, 594 F.3d at 760. "[T]he state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment." *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (citing *Ex parte Young*, 209 U.S. at 157). Next, the court applies these governing standards to determine if the *Ex parte Young* exception applies to plaintiffs' allegations here.

*First*, only one of plaintiffs' claims against defendant Klaassen asserts violations of federal law. In Count I, plaintiffs assert that Kan. Admin. Regs. § 60-11-101(a)—a regulation adopted by KSBN—violates the Kansas Constitution's nondelegation doctrine by delegating regulatory and legislative authority to private physicians. Doc. 1 at 17–19 (Compl. ¶¶ 96–110).[8] An alleged state law violation such as this does not fall under the *Ex parte Young* exception to sovereign immunity. *See Johns*, 57 F.3d at 1553 ("[T]he Eleventh Amendment bars suits brought in federal court seeking to enjoin a state official from violating state law."). The court thus dismisses plaintiffs' claims for declaratory and injunctive relief under Count I as barred by the Eleventh Amendment. *See id.* at 1559 (dismissing claims asserting violations of state law alone as barred by the Eleventh Amendment).

---

[8]     "The nondelegation doctrine flows from the separation of powers principles embodied in Art. 2, § 1 of the Kansas Constitution, which provides that '[t]he legislative power of this state shall be vested in a house of representatives and senate.' Under the nondelegation doctrine, State agencies may not delegate their power to make obligatory rules to private individuals or nongovernmental entities." *Schneider v. Kan. Sec. Comm'r*, 397 P.3d 1227, 1244 (Kan. Ct. App. 2017).

In Count II, however, plaintiffs have alleged an ongoing violation of federal law. If a state law is alleged to violate the U.S. Constitution, *Ex parte Young* may apply. *In re Crook*, 966 F.2d 539, 542 (10th Cir. 1992) ("[T]he Eleventh Amendment does not bar a federal court injunction to stop state officials from enforcing state laws that violate the United States Constitution."); *see also Johns*, 57 F.3d at 1552 ("The Eleventh Amendment does not . . . bar a suit brought in federal court seeking to prospectively enjoin a state official from violating federal law."); *Klein*, 975 F. Supp. at 1417 ("[T]he Eleventh Amendment does not provide state employees with immunity if they are sued in their official capacities for injunctive relief on a federal claim under the Fourteenth Amendment.").

Count II asserts that requiring a CPA to perform certain acts as nurse-midwives violates the Due Process Clauses of the Fifth[9] and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment. Doc. 1 at 20–23 (Compl. ¶¶ 111–127). Plaintiffs allege that the collaborative practice statutes and regulations violate their "rights to liberty and property in their profession" and their "liberty interest in being able to enforce private contracts." *Id.* at 21 (Compl. ¶¶ 121–122). Essentially, they assert that the statutes and regulations allowing for certain acts to be performed only if a CPA with a physician is in place violate their due process protections because the physician arbitrarily determines what rights they have to practice in their profession and that decision is non-reviewable by KSBN. *Id.* at 22 (Compl. ¶¶ 123–124). And, because a physician may terminate a CPA, their liberty interest is violated since it interferes with plaintiffs' private contracts with their clients. *Id.* (Compl. ¶¶ 122, 126). Finally, they also allege

---

[9] The court addresses plaintiffs' due process claims in the context of the Fourteenth Amendment below. The Complaint alleges due process violations under the Fifth Amendment to the U.S. Constitution as well. However, it does not assert any actions taken by the federal government nor are any federal actors involved as defendants. *See Couch v. Mitchell*, No. 15-4926, 2016 WL 5122534, at *5 (D. Kan. Sept. 20, 2016). The Fifth Amendment applies "only to action by the federal government." *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). So, plaintiffs do not state a claim for which relief can be granted under the Fifth Amendment. The court thus grants defendant Klaassen's Motion to Dismiss all of plaintiffs' Fifth Amendment claims.

an equal protection violation on the basis that: (1) the Kansas laws and regulations treat APRNs with a CPA differently from those who want to practice without one, (2) no standards apply across CPAs which produces unequal treatment of APRNs depending on if a CPA exists and what the physician will agree to in a CPA, and (3) there is no rational reason to limit APRN's ability to perform certain acts to circumstances where a CPA is in place. *Id.* at 11–14 (Compl. ¶¶ 63–80). So, these allegations show that Count II brings a claim for violation of federal law.

*Second*, plaintiffs' Complaint purports to seek only prospective relief against defendant Klaassen thorough various declarations about the constitutionality of the collaborative practice statutes and regulations and injunctions (i) prohibiting enforcement of such statutes and regulations and (ii) requiring KSBN to adopt new rules and regulations that correct the alleged state and federal constitutional violations. *See Tarrant Reg'l Water Dist. v. Sevenoaks*, 545 F.3d 906, 912–13 (10th Cir. 2008) (concluding that relief seeking "a declaratory judgment that the laws at issue are unconstitutional and cannot be enforced . . . as well as an injunction prohibiting the defendants from enforcing those laws" was "clearly prospective").

*Finally*, the court considers whether plaintiffs have alleged adequately defendant Klaassen's duty to enforce the laws in question and if she has the power to perform the act required, *i.e.*, to provide the declaratory and injunctive relief sought. *See Edmondson*, 594 F.3d at 760; *Barrett*, 562 F. App'x at 694; *Klein*, 975 F. Supp. at 1417.

In *Barrett v. University of New Mexico Board of Regents*, the plaintiff alleged the *Ex parte Young* exception applied to claims against individual board members serving on the University of New Mexico Board of Regents. *Barrett*, 562 F. App'x at 694. The Tenth Circuit determined that plaintiff had alleged that individual board members on the Board of Regents had a responsibility to enforce the statute in question. *Id.* But, the Tenth Circuit ultimately

determined that this assertion did not suffice to establish jurisdiction because under the New Mexico statute granting powers to the board, the board was only empowered to "act as a 'body corporate.'" *Id.* (quoting N.M. Stat. Ann. § 21-7-4 (West 1978)). Under that New Mexico statute, the board "constitue[s] a body corporate . . . with the right, as such, of suing and being sued, or contracting and being contracted with, of making and using a common seal and altering the same at pleasure." N.M. Stat. Ann. § 21-7-4 (West 1978).

Here, plaintiffs' Complaint repeatedly refers to acts of the KSBN (the board) rather than defendant Klaassen in her capacity as president of KSBN. *See, e.g.*, Doc.1 at 3 (Compl. ¶ 10) (referring to defendant Klaassen as "KSBN" throughout the Complaint because "a suit against an official is treated as a suit against the entity"). And the allegations and requested relief apply to acts of the board, rather than acts by defendant Klaassen. *See, e.g.*, *id.* (Compl. ¶ 110 (asking the court to order KSBN to adopt rules and regulations)). The Complaint does allege that KSBN has the power to enforce the statutes and regulations in question. But, even when construed liberally, the Complaint does not allege that defendant Klaassen alone could enforce the alleged unconstitutional collaborative practice statues and regulations or that she has demonstrated a willingness to do so. *See Barrett*, 562 F. App'x at 694. The relief requested by plaintiffs requires KSBN action. *See* Kan. Stat. Ann. §§ 74-1106(a)(1) (directing governor to appoint an 11 member board of nursing with "the duties, power and authority set forth in this act"), 74-1106(c)(2) (empowering the board to "adopt rules and regulations consistent with this act"), 74-1106(c)(3) (empowering the board to "examine, license, and renew licenses" and "conduct hearings upon charges for limitation, suspension or revocation of license"), 65-1130(c)(1) (the board of nursing "shall adopt rules and regulations applicable to [APRNs]" which "establish roles . . . of [APRNs] which are consistent with nursing practice specialties recognized by the

nursing profession"); 65-1130(c)(3) (the board of nursing shall "shall adopt rules and regulations applicable to [APRNs]" which "define the role of [APRNs] and establish limitations and restrictions on such role").

So, applying the *Barrett* analysis, defendant Klaassen alone does not have the necessary "power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment." *Klein*, 975 F. Supp. at 1417. Plaintiffs' claims for relief could be asserted against the KSBN itself, but not in federal court as the board is entitled to sovereign immunity. *See Murray v. Colorado*, 149 F. App'x 772, 774–775 (10th Cir. 2005) (affirming district court's holding that a university's board of regents was entitled to Eleventh Amendment immunity). So, plaintiffs' Complaint does not meet the *Ex parte Young* requirements to overcome the sovereign immunity bar and assert their Count II claims against defendant Klaassen.

But, plaintiffs argue they could assert their claims against *all* of the board members, and contend they did not add the other board members because it "would be duplicative and repetitive" and "not alter the relief requested." Doc. 1 at 17 (Compl. ¶ 97). Plaintiffs argue that, if the other board members are required, they should be allowed to amend the Complaint to include them. Doc. 19 at 8. Clearly based on the allegations and requests for relief in plaintiffs' Complaint here, all of the board members are required for the *Ex parte Young* exception to apply.[10]

---

[10] Under the New Mexico statute in *Barrett*, adding the additional board members as defendants would not overcome the Board of Regents sovereign immunity, as the statute empowered the board to act "as a body corporate." *Barrett*, 562 F. App'x at 694. Like in *Barrett*, under the applicable Kansas statutes, KSBN only is empowered to act as a group. *See* Kan. Stat. Ann. §§ 74-1106(a)(1) (directing governor to appoint an 11 member board of nursing with "the duties, power and authority set forth in this act"), 74-1106(c)(2) (empowering the board to "adopt rules and regulations consistent with this act"), 74-1106(c)(3) (empowering the board to "examine, license, and renew licenses" and "conduct hearings upon charges for limitation, suspension or revocation of license"), 65-1130(c)(1) (the board of nursing "shall adopt rules and regulations applicable to [APRNs]" which "establish roles . . . of [APRNs] which are consistent with nursing practice specialties recognized by the nursing profession"); 65-1130(c)(3) (the board of nursing shall "shall adopt rules and regulations applicable to [APRNs]" which "define the role of [APRNs] and establish limitations and restrictions on such role"). And, similar to the New Mexico statute,

The court could "infer that [plaintiffs] intended to bring an action against individual [b]oard members in their official capacities . . . and grant the plaintiff[s] a reasonable time to amend [their] claims . . . ." *People for the Ethical Treatment of Animals, Inc. v. Kan. State Fair Bd.*, 891 F. Supp. 2d 1212, 1218 (D. Kan. 2012); *see also Murray*, 149 F. App'x at 775 n.1 (noting that *Ex parte Young* did not apply to injunctive relief sought against the board of regents itself, as opposed to a suit against individual board members for prospective injunctive relief in their official capacities). But, as discussed below, the court finds plaintiffs' Count II claims are subject to dismissal for failing to state a claim upon which relief can be granted. The court thus does not grant such leave to amend here.

In sum, liberally construing plaintiffs' Complaint, Count II alleges an ongoing violation of federal law (Kansas APRN statutes and regulations that violate plaintiffs' due process and equal protection rights under the United States Constitution) and seeks prospective relief (a declaratory judgment that the laws are unconstitutional and an injunction prohibiting enforcement and requiring adoption of new regulations). If *all* of the members of KSBN were included as defendants here, the relief requested could fall within the *Ex parte Young* exception to overcome Eleventh Amendment immunity. So, the court next addresses defendant Klaassen's

---

KSBN itself may enter into contracts, be subject to suit, and use a seal. *See* Kan. Stat. Ann. §§ 65-1121a(a) ("Any agency action of the board of nursing pursuant to the Kansas nurse practice act is subject to review in accordance with the Kansas judicial review act."), 74-1106(c)(1) (noting that "[a]s necessary, the board shall be represented by an attorney appointed by the attorney general"), 74-1106(c)(5) ("The board shall have a seal . . . ."), 74-1106(c)(6) ("The board may enter into contracts as may be necessary to carry out its duties."). The Kansas Act for Judicial Review, Kan. Stat. Ann. §§ 77-601–623, "establishes the exclusive means of judicial review of agency action" and provides" that the [state] district court shall conduct review except when . . . otherwise provided by law." Kan. Stat. Ann. §§ 77-606, 77-609. S*ee, e.g.*, *Vaughan v. Kan. State Bd. of Nursing*, 366 P.3d 666 (Table), No. 113,508, 2016 WL 758348, at *1 (Kan. Ct. App. Feb. 26, 2016) (suit against KSBN appealing disciplinary action). But, while the Kansas statutes similarly require action of the entire board, the Kansas statutes do not contain similar "body corporate" language. So, the court considers whether it should allow amendment to add the other 10 board members here.

additional jurisdictional challenges and her challenges to the merits of plaintiffs' Count II, assuming the claims would be asserted against all of the KSBN board members.

### B. Justiciable Case or Controversy; Standing

Defendant Klaassen argues the Complaint's factual allegations "fail to state a justiciable case or controversy" and do not to establish "a basis for [p]laintiffs' standing." Doc. 12 at 12. Article III of the United States Constitution limits federal courts' jurisdiction to "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To present a case or controversy under Article III, a plaintiff must establish that he has standing to sue. *Id.* (citations omitted); *see also Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). Article III standing requires a plaintiff to establish (1) that he or she has "suffered an 'injury in fact;'" (2) that the injury is "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court;'" and, (3) that it is "'likely'" that "the injury will be 'redressed by a favorable decision.'" *Winn*, 563 U.S. at 134 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012).

At the pleading stage, general factual allegations are sufficient to carry plaintiffs' burden of establishing the elements of standing because the court must "'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)). "Each plaintiff must have standing to seek each form of relief in each claim." *Bronson v. Swensen*, 500 F.3d 1099, 1107 (10th Cir. 2007). "At bottom, the gist of the question of standing is whether petitioners have such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely

depends for illumination." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (citation and internal quotation marks omitted).

The individual plaintiffs Ms. Gorenc and Ms. Winkler, as licensed APRNs, are subject to the Kansas statutes and regulations which define the role of an APRN and "establish limitations and restrictions on such role." Kan. Stat. Ann. § 65-1130(c)(1), (c)(3). The Kansas Legislature has established that these individual plaintiffs have standing to challenge KSBN action, including the collaborative practice rules and regulations, in *state* court. *See* Kan. Stat. Ann. §§ 77-611 (establishing standing under the Kansas Act for Judicial Review), 77-606 (providing that the Kansas Act for Judicial Review "establishes the exclusive means of judicial review of agency action"), 77-609 (providing for review in state district court). So, plaintiffs clearly could have raised their challenges against KSBN itself in state court.

But, plaintiffs instead brought their challenge in federal court under 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201, 1331, 1343(3). They have sued defendant Klaassen, in her official capacity as a board member, alleging in Count II an ongoing violation of their due process and equal protection rights secured by the United States Constitution and seeking prospective relief. Under the "straightforward inquiry" required by the Supreme Court in *Verizon*, these claims fall within the narrow *Ex parte Young* exception to sovereign immunity. *Verizon*, 535 U.S. at 645. As the court concluded above, plaintiffs cannot raise challenges to these same statutes in Count I based on state law (the Kansas Constitution), which seek the same declaratory and injunctive relief, in this court. *See Jackson v. City of Overland Park, Kan.*, No. 11-2527-CM-DJW, 2012 WL 1231848, at *6 (D. Kan. Apr. 11, 2012) ("An alleged violation of a state constitution cannot form the basis of a §1983 claim."). So, the court, below, considers only whether plaintiffs have

established the requisite injury in fact, causation, and redressability to bring their Count II claims in this court.

Here, plaintiffs seek prospective declaratory relief and injunctions in the form of a court order holding the Kansas collaborative practice statutes and regulations are unconstitutional. "[B]oth forms of prospective relief trigger the same standing analysis." *Bronson*, 500 F.3d at 1107. Plaintiffs assert the collaborative practice provisions violate their equal protection and due process rights secured by the United States Constitution.

### i. Injury In Fact

An "injury in fact" means "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Winn*, 563 U.S. at 134 (internal citation and quotations omitted). It must "affect the plaintiff in a personal and individual way." *Id.* (internal citation and quotations omitted). "[A]llegations of *possible* future injury are not sufficient." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014). On a motion to dismiss for lack of standing, the court cannot consider the merits of the alleged legally protected interest. *Id.* Instead, the court must "assume for purposes of the standing inquiry that each claim is legally valid." *Id.*

Here, defendant Klaassen argues that the Complaint alleges no action on her part that has injured plaintiffs. Doc. 12 at 18. She notes that plaintiffs did not raise any challenges to the collaborative practice statutes and regulations until their CPA with defendant Proverbs was terminated, and KSBN has not taken any action or threatened any future action against plaintiffs' APRN licenses. *Id.* at 18–19. So, defendant Klaassen argues, the cause of plaintiffs' alleged injuries was defendant Proverbs's action in terminating the CPA—not any action of defendant Klaassen, KSBN, or any other board members. *Id.* at 14–19, 24–25. Defendant Klaassen also

points out that the collaborative practice regulation is permissive—expanding an APRNs role to include "medical decisions" if he or she secures a CPA that allows it—but, with or without a CPA, plaintiffs still have their APRN licenses and thus still can practice in their chosen profession. *Id.* at 14–15, 19. And, defendant Klaassen argues, even if the court declared Kan. Admin. Regs. § 60-11-110 unconstitutional and enjoined the KSBN board members from enforcing it, the Kansas State Board of Healing Arts is the Kansas agency with the authority to regulate the ability to make "medical decisions," not KSBN. [11] Doc. 12 at 15, 30–31. So, the court cannot grant the plaintiffs' requested relief of new KSBN statutes redefining the role of APRNs to include explicitly the independent ability to make medical decisions. Instead, an injunction against enforcement would merely take away the permissive authority and remove it completely. Doc. 12 at 15.

Plaintiffs agree their injury was the revocation of the CPA. Doc. 19 at 3. But, they also contend that KSBN has limited their right to practice in their chosen profession without necessary due process protections. *Id.* Liberally construing plaintiffs' Complaint, they have alleged that the KSBN regulations subject them to ongoing constitutional violations by employing a scheme where private physicians get to decide which medical decisions APRNs can make and if they will agree to a CPA granting an APRN such rights. They challenge this regulation as a violation of their "right to practice in their chosen profession" because the Kansas

---

[11] The parties' briefs also present an in-depth discussion about a different Kansas act, the Independent Practice of Midwifery Act, Kan. Stat. Ann. §§ 65-28b01, *et. seq.* This act provides a "certified nurse-midwife" the ability to provide certain services without a collaborative practice agreement, including prescribing drugs, if he or she holds a license from both KSBN under the Kansas nurse practice act and a license from the Kansas State Board of Healing Arts ("KSBHA") that authorizes he or she to engage in the independent practice of midwifery. Kan. Stat. Ann. §§ 65-28b01, 65-28b06. The KSBHA is tasked with adopting rules and regulations for "certified nurse-midwives engaging in the independent practice of midwifery." And, it is directed to consult with KSBN "on the content of each rule and regulation." Kan. Stat. Ann. § 65-28b07. Plaintiffs contend no license is available from KSBHA yet, the dual regulatory scheme is confusing, and the Independent Practice of Midwifery Act is more limited than what care they provide to their clients. Doc. 22 at 4–5.

statutes and regulations are overly vague on what physicians must consider when deciding whether to enter into a CPA and what actions are prohibited with or without a CPA. And, there is no review process for revoking a CPA that takes away any rights granted, or a physician's refusal to enter into a CPA. Also, the CPA requirement treats APRNs differently depending on whether an APRN has a CPA and, if so, what the CPA allows. Finally, plaintiffs believe the requirement to have a CPA to make medical decisions is not a rational limitation on their APRN profession.

Essentially, plaintiffs' position is their "right to practice in their chosen profession" includes the ability of nurse-midwives to make certain medical decisions. If they exercise this right through a CPA with a physician, they argue the liberty/property interest involved should not be taken away without due process. *See* Doc. 19 at 9–10. And, plaintiffs contend, they should have the right to make such medical decisions and have prescribing authority without a CPA because it is something APRNs are competent to do (as evidenced by including it in educational nursing programs and in the statutes and regulations). Thus, placing restrictions around their ability to practice in the statues and regulations violates their constitutional right to practice in their chosen profession. So, it appears the lack of guidance and review around CPAs in the statutes and regulations and the lack of clear independent authority to make certain medical decisions affecting plaintiffs' right to practice in their chosen profession is plaintiffs' alleged injury—not merely the revocation of the CPA granting privileges at SMMCH caused by acts of other parties like defendant Proverbs.

The "assertion of a right to practice in their chosen profession" is sufficient to state a legally protected interest at the motion to dismiss stage. *Sammon v. N.J. Bd. of Medical Exam'rs*, 66 F.3d 639, 642 (3d Cir. 1995) ("[T]he aspiring midwives assertion of a right to

practice their chosen profession is a legally cognizable one."). The Third Circuit considered a substantive due process challenge to New Jersey's statutory requirements for securing a license to practice midwifery which included (a) 1800 hours of study at a midwifery school or hospital and (b) a physician indorsement of the license application. *Id.* at 640–41. Because these requirements made it more difficult for aspiring midwives to get licensed to practice and they alleged a present desire to work as midwives, the Third Circuit concluded the midwives had established a concrete and particularized injury "affecting each aspiring midwife in a personal and individual way." *Id.* at 641 (internal quotations and citations omitted). Here, plaintiffs already have APRN licenses and seek to challenge the provisions in the administrative regulations they allege are unconstitutional and make it more difficult to practice in their chosen profession. So, like the midwives in *Sammon*, the court finds plaintiffs have asserted a cognizable injury here.

In response to defendant Klaassen's assertion that KSBN has taken no actions against their APRN licenses and the CPA requirement is merely permissive, plaintiffs argue they "would have to knowingly violate" Kan. Admin. Regs. § 60-11-101 and "await disciplinary action by KSBN" to challenge the constitutionality of the CPA requirements. *See* Doc. 1 at 17 (Compl. ¶ 94). In the context of a penal statute, the Tenth Circuit has explained "[t]o comply with the Due Process Clause of the Fourteenth Amendment, it is requisite that [the statute] give fair notice to ordinary people of what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement." *Aid for Women v. Foulston*, 441 F.3d 1101, 1110 (10th Cir. 2006). "[U]ncertainty as to what conduct will lead to prosecution . . . potentially deprive[s] [p]laintiffs of this 'fair notice.'" *Id.*

Applying this concept to the regulatory scheme governing APRNs, plaintiffs have alleged they intend to engage in the activity covered by the regulation (they have ARPN licenses and an independent midwifery practice, and they desire to perform certain acts like making medical decisions either independently, as they contend the profession of nursing recognizes they are capable to provide, or through a CPA process that provides adequate due process protections and treats APRNs equally). *See Foulston*, 441 F.3d at 1110. And, though KSBN has not taken any action against their licenses, if they were to engage in such activity without a CPA, KSBN presumably could take action against their licenses. Alternatively, if plaintiffs try to secure a CPA, they contend they must do so under a scheme without adequate notice of what physicians must consider when deciding whether to grant a CPA and what is allowed under a CPA, and without a means for review by KSBN if the rights that are granted are taken away (or not granted in the first place). So, because failing to follow the CPA requirement as currently in place could lead to action against plaintiffs' APRN licenses and limits their ability to practice in their chosen profession generally by giving authority to physicians to decide what different APRNs can and cannot do without KSBN involvement, plaintiffs' due process and equal protection rights are implicated, and they have satisfied the injury in fact prong of standing. *See Foulston*, 441 F.3d at 1110–11.

### ii. Causation and Redressability

Where a plaintiff "challenge[s] the constitutionality of a statutory provision," the "causation element of standing requires the named defendants to possess authority to enforce the complained of provision." *Bronson*, 500 F.3d at 1110. Similarly, to meet the "redressability prong" the defendant must have the power to enforce the challenged statute. *Id.* at 1111. So, plaintiffs who sue public officials can satisfy the causation and redressability requirements—

parts (2) and (3) of the standard—by demonstrating a "meaningful nexus" between the defendant and the asserted injury. *Id.* at 1109–12.

In *Sammon*, the Third Circuit found causation and redressability were present because but for the licensing requirements, the aspiring midwives would become licensed midwives. The injury was thus "fairly traceable to the . . . statutory scheme and likely to be redressed by a favorable decision ruling that scheme unconstitutional." *Id.* The court finds causation and redressability present here as well. But for the collaborative practice regulation, plaintiffs could practice in their chosen profession free from physician interference. So, the regulation raises due process and equal protection concerns. *See Petrella v. Brownback*, 697 F.3d 1285,1293–94 (10th Cir. 2012) ("It cannot seriously be disputed that the proper vehicle for challenging the constitutionally of a state statute, where only prospective, non-monetary relief is sought, is an action against the state officials responsible for the enforcement of that statute."). But, as explained below, a finding of redressability does not mean plaintiffs can practice however they choose without restrictions.

The question whether a CPA is necessary to allow plaintiffs to make medical decisions as part of their right to practice in their chosen profession is traceable to the KSBN regulation. Plaintiffs' due process and equal protection challenges stem from KSBN's interpretation of Kan. Stat. Ann. § 65-1130 and adoption of a regulations defining the role of APRNs. That statute directs KSBN to:

> adopt a definition of the role under this paragraph which is consistent with the education and qualifications required to obtain a license as an advanced practice registered nurse, which protects the public from persons performing functions and procedures as advanced practice registered nurses for which they lack adequate education and qualifications and which authorizes advanced practice registered nurses to perform acts generally recognized by the profession of nursing as capable of being performed, in a manner consistent with the public health and safety, by persons with postbasic education in nursing. In defining such role the board shall

consider: (A) The education required for a licensure as an advanced practice registered nurse; (B) the type of nursing practice and preparation in specialized advanced practice skills involved in each role of advanced practice registered nurse established by the board; (C) the scope and limitations of advanced practice nursing prescribed by national advanced practice organizations; and (D) acts recognized by the nursing profession as appropriate to be performed by persons with postbasic education in nursing.

Kan. Stat. Ann. § 65-1130.

Plaintiffs contend KSBN's adoption of Kan. Admin. Regs. § 60-11-1101, which limits their ability to make medical decisions to situations only when a CPA is place, was not proper under § 65-1130's instruction to KSBN to define the role of APRNs in a manner "which authorizes advanced practice registered nurses to perform acts generally recognized by the profession of nursing as capable of being performed."  Instead, plaintiffs argue KSBN has restricted their ability to practice in their chosen profession to less than what the profession recognizes they are capable of doing and done so in a way that results in a lack of due process and unequal treatment of APRNs.

Because the KSBN board members have the authority to enforce the challenged regulations, the required causal connection between plaintiffs' alleged injury and the KSBN board members exists.  *See Bronson*, 500 F.3d at 1109–11; *Foulston*, 441 F.3d at 1101.  And, for the same reason, the redressability requirement is met.  *See Bronson*, 500 F.3d at 1111–12; *Foulston*, 441 F.3d at 1111.  A declaratory judgment about the constitutionality of the collaborative practice regulation or an injunction against enforcement of the challenged regulation may not provide plaintiffs the true relief the they seek—*i.e.*, the clear independent ability to, without physician involvement, (i) make medical decisions (which would require KSBN to adopt new regulations expanding the defined role of all APRNs to include the ability to make "medical decisions" that still comports with the Kansas Legislature's definition of the

practice of nursing in Kan. Stat. Ann. § 65-1113 which includes "the execution of the medical regimen *as prescribed by a person licensed to practice medicine and surgery*" only) and (ii) to prescribe drugs (which would require the Kansas Legislature to amend the prescribing limitations in Kan. Stat. Ann. §65-1130(c), (g) that require a protocol *authorized by a responsible physician* or a separate license from the Kansas State Board of Healing Arts). But, it would address their equal protection and due process concerns raised by the current allegedly unconstitutional collaborative practice provision in Kan. Admin. Regs. § 60-11-101. If APRNs could no longer develop medical plans or make medical decisions under a CPA, it would alleviate plaintiffs' alleged injuries caused by the lack of guidance about what physicians must consider and include when deciding whether to enter into a CPA. Also, it would redress plaintiffs' alleged injuries based on the lack of review for any termination of or failure to agree to enter into a CPA. *See Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1158 (10th Cir. 2005) ("The plaintiff must show that a favorable judgment will relieve a discrete injury, although it need not relieve his or her every injury."); *Brownback*, 697 F.3d at 1294 ("Unequal treatment may be redressed either by extending the sought-after benefit to the disfavored class, or by withdrawing the benefit from the favored class.").

The court thus concludes the Complaint is sufficient to establish the individual plaintiffs' standing. It alleges (1) plaintiffs are subject to a Kansas collaborative practice regulation that has injured their right to practice in their chosen profession, which (2) is fairly traceable to the KSBN board members who have the authority to enact and enforce regulations governing APRNs, and (3) enjoining enforcement of such regulation would redress plaintiffs' injuries.

However, applying the same standards to the plaintiff entity—Midwife Partners in Women's Wellness—the court finds the Complaint alleges no injury against it that is traceable to

defendant Klaassen's and the board members' conduct.  It is not subject to the Kansas statutes and regulations governing APRNs.  So, Midwife Partners in Women's Wellness lacks standing to the extent the Complaint asserts claims against defendant Klaassen, KSBN, or the other board members by Midwife Partners in Women's Wellness.  *Williston v. Vasterling*, 536 S.W.3d 321, 339–41 (Mo. Ct. App. 2017) (affirming district court's dismissal for lack of standing because birthing center operator did not have standing to challenge constitutionality of collaborative practice policies, statutes, and regulations of state board of nursing and board of registration for the healing arts because he was not licensed as an APRN subject to agency authority, and thus did not have "legally protectable interest").  The court thus dismisses the claims asserted by Midwife Partners in Women's Wellness for lack of standing.

### C.     Failure to State a Claim

Finally, the court turns to the question whether the individual plaintiffs have alleged facts sufficient to state a claim upon which relief can be granted under 42 U.S.C. § 1983 and 28 U.S.C. § 2201.  For reasons explained below, the court concludes they have not.

Count II asserts that KSBN has deprived plaintiffs of their rights to due process and equal protection under the Fourteenth Amendment by requiring a CPA to perform certain acts as licensed APRNs practicing as nurse-midwives.  Doc. 1 at 20–23 (Compl. ¶¶ 111–127).  These allegations are intertwined with Count I's state law claim that Kansas's "scheme for regulating [p]laintiffs delegates legislative power to private physicians" in violation of the Kansas Constitution.  Doc. 1 at 2 (Compl. ¶ 1).  Plaintiffs' arguments that the KSBN has violated their rights to substantive and procedural due process and equal protection all stem from the alleged improper delegation of power to private physicians.  The court must endeavor to analyze the merits of the federal law claims while respecting that sovereign immunity prohibits it from

considering Count I. The court thus analyzes whether the KSBN has violated plaintiffs' due process and equal protection rights under the existing Kansas framework regulating APRNs.

A defendant is liable under §1983 if, acting under color of state law, she deprives a plaintiff of a constitutional right. "In order to survive a Rule 12(b)(6) motion to dismiss a §1983 claim, a plaintiff must allege (1) a violation of rights protected by the federal Constitution . . . , (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage of any State . . . ." *Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005) (internal quotations and citation omitted). "In general, state actors may only be held liable under § 1983 for their own acts, not the acts of third parties." *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)). Thus, to state a plausible § 1983 claim against individual state actors, plaintiffs' Complaint must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* (citing *Twombly*, 550 U.S. at 564 n. 10).

Here, the Complaint only makes conclusory allegations against defendant Klaassen and KSBN. It does not allege any specific facts about defendant Klaassen or any other board members or what they allegedly did to deprive plaintiffs of any federal constitutional rights. Instead, the allegations against KSBN all relate to plaintiffs' disagreement with Kan. Admin. Regs. § 60-11-101 and the current "scheme for regulating plaintiffs" by giving "legislative power to private physicians," which relate to Count I's state law claims. Doc. 1 at 2. (Compl. ¶ 1). Most of the allegations about federal constitutional violations are directed at all "defendants" without isolating any action by defendant Klaassen or the KSBN board members, or are directed

at defendant Proverbs, Adventist, and the OB/GYNs.  *See, e.g.*, Doc. 1 at 2, 6, 14, 15 (Compl. ¶¶ 3 ("[d]efendants have . . . deprived [p]laintiffs of their liberty and property interests"), 35 (the termination of the "CPA by Dr. Proverbs and refusal to grant a new one by the Laborists deprived [p]laintiffs of their constitutionally protected liberty and property interests in forming private contracts and practicing in their chosen profession"), 82 ("The acts of Dr. Proverbs and the Laborists . . . deprived [plaintiffs] of their liberty and property interests without notice, hearing, impartial decision maker or any right or ability to appeal or seek judicial review."), 84 ("Plaintiffs were forced to comply with Dr. Proverbs' and the Laborists' deprivation of [p]laintiffs' rights, as if [p]laintiffs would have been prosecuted by KSBN"), 87 ("The policy of KSBN and the acts of Dr. Proverbs, the Laborists and Adventist were the proximate and legal cause of [p]laintiffs['] deprivation of [p]laintiffs' constitutionally protected liberty and property interests in practicing their chosen profession free from unreasonable restraint.")). And, the allegations directed at KSBN are conclusory.  *See, e.g.*, Doc. 1 at 20 (Compl. ¶ 114 ("KSBN has enforced and continues to enforce the CPA policy in an arbitrary, inconsistent, and discriminatory manner")).  These allegations do not suffice to state a claim that defendant Klaassen, acting under color of the Kansas collaborative practice statutes or regulations, proximately caused a violation of plaintiffs' due process and equal protection rights.  *See Robbins*, 519 F.3d at 1250 (holding that plaintiff failed to state a § 1983 claim by making "collective allegations against the state," and instead, plaintiff bears the burden to "provide fair notice of the grounds for the claims made against each of the defendants" by "isolat[ing] the allegedly unconstitutional acts [against] each defendant" in the complaint so that the defendants know "what particular unconstitutional acts they are alleged to have committed" (citations omitted)).  As discussed above, KSBN is responsible for promulgating regulations and

overseeing APRN licenses. But the Complaint does not allege defendant Klaassen or any other board member took any action against plaintiffs' licenses or any other action that violated plaintiffs' rights.

The only other allegation against KSBN ties to the constitutionality of the statutes and regulations themselves. The Complaint alleges "[o]n information and belief, KSBN promulgated [the collaborative practice regulation] after negotiation with the [KSBHA] and a decision to interpret the definition of 'nursing' to exclude certain acts that are 'consistent with nursing practice specialties recognized by the nursing profession' both in the state of Kansas and nationally." Doc. 1 at 11 (Compl. ¶ 63). Plaintiffs believe the collaborative practice provisions—*i.e.*, the limitation on the ability of an APRN to make "medical decisions" unless a CPA with a physician is in place—violate their due process and equal protection rights secured by the Constitution. The court next considers whether these claims state a plausible claim for relief.

Plaintiffs' Complaint alleges both substantive and procedural due process violations. The Fourteenth Amendment's due process clause provides two types of constitutional protections: procedural due process rights and substantive due process rights. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Substantive due process "guarantees that the state will not deprive a person" of certain rights "no matter how fair the procedures are" used to make the decision. *Id.* Procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision." *Id.* The Complaint's equal protection claim also involves the Fourteenth Amendment. This provision's equal protection clause provides, "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV.

The court first must determine the standard of review to apply. The Complaint here alleges the collaborative practice provisions unconstitutionally deprive plaintiffs of their "protected liberty and property interests in practicing in their chosen profession free from unreasonable restraint." Doc. 1 at 15 (Compl. ¶ 87). The regulation does not prohibit plaintiffs from practicing as nurse-midwives entirely. Indeed, they have active APRN licenses, which show they meet the qualifications to practice. But, it does regulate the acts plaintiffs may perform in their role as nurse-midwives.

Due process and equal protection challenges to state statutes and regulations that do not affect a fundamental right or categorize people on the basis of a suspect class receive rational basis review. *See Powers v. Harris*, 379 F.3d 1208, 1214–15 (10th Cir. 2004) (reviewing statute requiring a person to be a licensed funeral director to sell caskets and holding it did not violate substantive due process or equal protection right to follow any profession a person may choose); *Younger v. Colo. State Bd. of Law Exam'rs*, 625 F.2d 372, 376 (10th Cir. 1980) (applying rational basis to claim asserting rule that limits the number of times a person may take the bar exam violates substantive due process). "State restrictions on the right to practice a profession receive rational basis review rather than higher scrutiny." *Sammon*, 66 F.3d at 645 (first citing *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483 (1995), then citing *Schware v. Bd. of Bar Exam'rs*, 353 U.S. 232, 239 (1957)). "To satisfy the rational basis test," the challenged provisions "need only be rationally related to a legitimate government purpose." *Younger*, 625 F.2d at 376 (internal citation and quotations omitted). The court thus considers whether plaintiffs have stated a plausible claim that the collaborative practice statutes are unconstitutional under the rational basis test.

### i. Substantive Due Process

Plaintiffs contend the collaborative practice regulation violates their substantive due process rights. "Where rational basis review is appropriate, a statute withstands a substantive due process challenge if the state identifies a legitimate state interest that the legislature rationally could conclude was served by the statute." *Sammon*, 66 F.3d at 645. And, "whether a particular legislative scheme is rationally related to a legitimate governmental interest is a question of law." *Id.*

So, to state a plausible claim that the collaborative practice statutes and regulations violate plaintiffs' substantive due process rights, they must plausibly allege that no legitimate state interest is served by imposing this restriction on their practice. Plaintiffs have attempted to do so in their Complaint. *See, e.g.*, Doc. 1 at 13, 21 (Compl. ¶¶ 74 ("The Kansas Legislature could not have rationally believed that the public would be protected by legislation that arbitrarily limited the nursing profession to less than what APRNs are safe, competent and trustworthy to provide."), 119 ("The CPA Policy gives broad, unrestricted authority to private persons to discriminate against their ideological, political and economic rivals. Even under the lowest level of scrutiny, the CPA Policy deprives the public of access to safe, competent and trustworthy providers while failing to protect the public against unsafe, incompetent and untrustworthy providers and so bears no rational relationship to any legitimate government interest.")).

The court, however, is convinced otherwise. The Kansas Legislature directed KSBN to define the APRN's role and "establish limitations and restrictions on such role" taking into account the following:

The board shall adopt a definition of the role under this paragraph which is consistent with the education and qualifications required to obtain a license as an advanced practice registered nurse, which protects the public from persons performing functions and procedures as advanced practice registered nurses for which they lack adequate education and qualifications and which authorizes advanced practice registered nurses to perform acts generally recognized by the profession of nursing as capable of being performed, in a manner consistent with the public health and safety, by persons with postbasic education in nursing. In defining such role the board shall consider: (A) The education required for a licensure as an advanced practice registered nurse; (B) the type of nursing practice and preparation in specialized advanced practice skills involved in each role of advanced practice registered nurse established by the board; (C) the scope and limitations of advanced practice nursing prescribed by national advanced practice organizations; and (D) acts recognized by the nursing profession as appropriate to be performed by persons with postbasic education in nursing.

Kan. Stat. Ann. § 65-1130(c)(3).

The directive contemplates licensing restrictions to "protect[ ] the public from persons performing functions and procedures as advanced practice registered nurses for which they lack adequate education and qualifications." *Id.* The legislature has authorized an APRN to perform acts like prescribing drugs, but requires an APRN to do so under a written protocol with a responsible physician. Kan. Stat. Ann. § 65-1130(d). The "scope of authority" of the ARPN cannot "exceed the normal and customary practice of the responsible physician." *Id.* A responsible physician is someone "licensed to practice medicine and surgery in Kansas." *Id.* Similarly, the CPA regulation requires involvement of a "physician," defined as a "person licensed to practice medicine and surgery by the state board of healing arts." Kan. Admin. Regs. 60-11-101. It appears Kansas is developing a method for nurse-midwives to practice independently, including performing certain acts like prescribing drugs without a CPA, *provided the nurse-midwife is licensed by KSBHA. See* Kan. Stat. Ann. §§ 65-1130(g), 65-28b01, 65-28b02, 65-28b06. But, until an independent practice of midwifery license is available from KSBHA which will protect the public by monitoring providers' qualifications to perform such

services, an APRN can make "medical decisions" and have prescribing authority only when a physician licensed by the KSBHA is involved.

The court concludes these CPA limitations on an APRN license further a legitimate state interest. They protect the health and welfare of the public, such as mothers and children who may seek the services of a midwife. *See Sammon*, 66 F.3d at 646 (holding licensing application requirements for midwives that included an indorsement from a registered physician and training at a school or hospital, rather than an apprenticeship with a midwife, furthered legitimate state interest "in protecting the health and welfare of the mother and . . . of the child"). And, they further the state's interest in assuring providers "are qualified to perform their jobs." *Id.*

While some APRNs possibly are qualified to make medical decisions or prescribe drugs, the court cannot say that the requirement of a CPA does not further a legitimate state interest. *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 486–87 (1955) (holding Oklahoma law that forbid optician from fitting lenses without a prescription from an ophthalmologist or optometrist did not violate optician's due process rights "by arbitrarily interfering with the optician's right to do business"); *Dent v. West Virginia*, 129 U.S. 114, 121–22 (1889) (holding "there is no arbitrary deprivation" of the right of plaintiff to "practice his profession" (medicine) "where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society").

The court "must not interfere with the State's policy if it rationally furthers" a legitimate government interest. *Younger*, 625 F.2d at 377. "[I]t is for the legislature, not the courts, to balance the advantages and disadvantages" of the restrictions on plaintiffs' licenses. *Williamson*, 348 U.S. 487; *see also Sammon*, 66 F.3d at 646 (discussing the potential conflict of interest of the requirement that a physician indorse a midwife's license application since they are at times

competitors, but concluding it was also rational that the benefit of "soliciting the views of a medically trained individual" with "some personal contact with the candidate" could outweigh "the burden it places on candidates").  Plaintiffs have not stated a plausible substantive due process violation here.

### ii.  Equal Protection

For the same reasons as the substantive due process claims, plaintiffs' equal protection claims also fail to state a plausible claim for relief.  An equal protection claim requires a "threshold allegation that the plaintiff was treated differently from similarly situated individuals."  *Watson v. Williams*, 329 F. App'x. 193, 196 (10th Cir. 2009).  Such a claim requires a plaintiff to allege facts "demonstrat[ing] that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose."  *United States v. Armstrong*, 517 U.S. 456, 465 (1996); *see also Lindsey v. Thomson*, 275 F. App'x 744, 746 (10th Cir. 2007) (affirming district court's dismissal of plaintiff's equal protection claim under Rule 12(b)(6) because he failed to allege that he was "a member of a protected class (other than a reference to a disability) or that any of the Defendants discriminated against him on that basis"). "[U]nder rational basis review, a court must uphold differential treatment against [an] equal protection challenge 'if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'"  *Turner*, 2012 WL 1435295, at *12 (quoting *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)).

While it is unclear exactly who plaintiffs claim to have received different treatment from KSBN—whether it is APRNs without CPAs versus APRNs with CPAs, the differing treatment across APRNs with CPAs depending on the CPA terms, or APRNs versus others with professional licenses generally—a rational basis exists for imposing restrictions on an APRN

license and the ability to perform certain acts like making medical decisions as part of that license. Plaintiffs have failed to state a claim upon which relief can be granted here because, as discussed above, plaintiffs cannot plausibly allege the CPA requirement is not rationally related to any legitimate state interest such as ensuring safe, qualified providers are providing care to patients.

### iii. Procedural Due Process

"To state a § 1983 claim for deprivation of property or liberty without due process, plaintiff[s] must allege a constitutionally protected interest, and that [they were] deprived of that interest by state action. If these elements are alleged, the question becomes what process was due and whether it was provided." *Jackson v. City of Overland Park, Kan.*, No. 11-2527-CM-DJW, 2012 WL 1231848, at *4 (D. Kan. Apr. 11, 2012); *see also Guttman v. Khalsa*, 669 F.3d 1101, 1113–14 (10th Cir. 2012).

"A protectable right is not simply something that a person professes to have an abstract need or desire to acquire. Instead, a person has a protectable liberty or property right when he has a legitimate claim of entitlement to something." *Heath v. Norwood*, 325 F. Supp. 3d 1183, 1191 (D. Kan. 2018) (internal quotations and citations omitted). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

A property interest is not derived from the Constitution, but instead is created by an independent source such as state law. *Hennigh*, 155 F.3d at 1253; *Fisher Sand & Gravel, Co. v. Giron*, 465 F. App'x 774, 779 (10th Cir. 2012). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that

support his claim of entitlement. A contract or ordinance, for instance, may create a property interest in employment." *Lentsch v. Marshall*, 741 F.2d 301, 305 (10th Cir. 1984) (internal quotations and citation omitted). "Ordinarily, one who has a protected [ ] interest is entitled to some sort of hearing before the government acts to impair that interest." *Guttman*, 669 F.3d at 1114. "[D]ue process is flexible and calls for such procedural protections as the situation demands." *Id.*

Plaintiffs allege a procedural due process violation by defendant Proverbs, Adventist and the OB/GYNs at SMMCH because either they revoked or interfered with plaintiffs' ability to secure a CPA with admitting privileges at SMMCH, without notice, a hearing, or a right to appeal and this impaired plaintiffs' contracts with their clients. Doc. 1 at 14 (Compl. ¶ 82). The Complaint does not allege any procedural due process violations by KSBN. But, it does contend that the KSBN regulation surrounding the CPA requirements is overly vague. And, plaintiffs argue, KSBN should regulate CPAs and provide hearings prior to a revocation similar to what is required if an action is taken against an APRN license.

But, the court concludes here plaintiffs do not have a legitimate claim of entitlement to a protected interest arising from the KSBN regulation. Instead, the mutually explicit understandings are found in the CPA as agreed between each APRN and physician. Whether the CPA gives rise to a constitutionally protected interest deserving of procedural due process protections will depend on the circumstances. The KSBN regulation does allow APRNs to perform in an expanded role if a CPA is in place. *See* Kan. Admin. Regs. § 60-11-101(a). But, the APRN and physician jointly develop the terms authorizing such a collaborative practice. *See* Kan. Admin. Regs. § 60-11-101(b). Thus, where APRNs choose to secure a CPA, the agreement is between the physician and the APRN. And, the risk that the CPA will be impaired lies in that

contractual relationship.  Like any other contract between private parties, if plaintiffs desire a certain amount of notice before termination or other protections surrounding the agreement, they can negotiate for those types of contract provisions with the physician.

The alleged deficiencies in the KSBN regulation do not rise to a level sufficient to state a plausible claim that APRNs have a protected interest in the tentative benefits that an APRN may enjoy from entering into a CPA with a physician—if an APRN secures one—and that KSBN has denied them adequate procedural due process for that interest.  Also, the court finds that plaintiffs have not stated a plausible claim that APRNs are denied adequate procedural due process protections if the KSBN does not oversee the contractual relationship between the APRN and the physician to a CPA.  One physician's decision to deprive plaintiffs of a CPA does not mean the KSBN has deprived plaintiffs of a liberty or property interest in their profession.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 575 (1972) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.").  Plaintiffs do not allege that their nursing licenses are at risk, that they are deprived entirely of the ability to practice as APRNs without a CPA, or that they are deprived of the ability to seek a CPA with another physician if their existing agreement ends.

Plaintiffs' vagueness challenges fail to state a claim as well.  "A statute which is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates due process."  *Brennan v. Occupational Safety and Health Review Comm'n*, 505 F.2d 869, 872 (10th Cir. 1974).  "Administrative regulations are presumptively valid, and one who attacks them has the burden of showing their invalidity."  *Smaldone v. United States*, 458 F. Supp. 1000, 1003 (D. Kan. 1978); *see also City of Albuquerque v. Browner*, 97 F.3d 415,

429 (10th Cir. 1996) (explaining a regulation generally is not unconstitutionally vague if it "puts the regulated party on notice as to what conduct is required" or "the regulated party has the means of obtaining clarification either by making inquiry or through an administrative process."). Here, plaintiffs' allegations that the collaborative practice regulation is vague merely are conclusory recitations of the claim's elements. They have not plausibly alleged how the statute is so vague that it does not "delineate its reach in words of common understanding." *Brennan*, 505 F.2d at 872. Indeed, plaintiffs were able to operate under the regulation in the past, under their CPA with defendant Proverbs. If plaintiffs desire more guidance and oversight in the regulation, they can lobby the Kansas Legislature for such protections.

The court holds plaintiffs here have not shown a protected interest that is entitled to procedural due process protections from KSBN that could sustain a plausible claim for a procedural due process violation.

### D. Conclusion

The court concludes that defendant Klaassen, in her official capacity as the President of KSBN, is immune from suit under the Eleventh Amendment with respect to Count I.[12] The court thus grants defendant Klaassen's motion to dismiss Count I. And, to the extent plaintiffs intended to sue KSBN itself, KSBN is immune from suit under the Eleventh Amendment with respect to both Counts I and II. Thus, the court dismisses all Counts against KSBN. The court dismisses the claims asserted by Midwife Partners in Women's Wellness for lack of standing. Finally, the court concludes that plaintiffs have failed to state a plausible claim for relief against

---

[12]     When dismissing a case based on sovereign immunity, the Court must dismiss the case without prejudice. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cty., Okla. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds . . .  must be without prejudice." (citations omitted)).

defendant Klaassen, and, if they were added, the other board members of the KSBN. The court thus grants defendant Klaassen's motion to dismiss Count II. Because the court dismisses all Counts against defendant Klaassen with this Order, the court directs the Clerk of the Court to terminate defendant Klaassen as a defendant in this action.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant JoAnn Klaassen, RN, MN, JD's Motion to Dismiss (Doc. 11) is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** the Clerk of the Court is directed to terminate defendant JoAnn Klaassen, RN, MN, JD as a defendant in this action.

**IT IS SO ORDERED.**

**Dated this 30th day of September, 2019, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
