IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JULIE GORENC, KARA WINKLER, and
MIDWIFE PARTNERS IN WOMEN'S
WELLNESS, LLC,

    Plaintiffs,

v.

JANETTA PROVERBS, et al.,

    Defendants.

Case No. 18-2403-DDC-JPO

**MEMORANDUM AND ORDER**

Before the court is plaintiffs Julie Gorenc, Kara Winkler, and Midwife Partners in Women's Wellness, LLC's Motion to Reconsider (Doc. 36). Defendants Adventist Health Mid-America, Inc. ("Adventist"), Susan Dahlin, Kathy Gaumer, Laura McMurray, and Lisa Pazdernik's (collectively, the "Laborists") have filed a Response (Doc. 37). Plaintiffs never filed a Reply. And, the time for filing one has expired. For reasons explained below, the court denies plaintiffs' motion.

**I.    Background[1]**

Julie Gorenc and Kara Winkler are nurse-midwives holding active advance practice registered nurse ("APRN") licenses issued by the Kansas State Board of Nursing ("KSBN"). Doc. 1 at 3 (Compl. ¶¶ 7–8). Ms. Gorenc and Ms. Winkler practice through Midwife Partners in Women's Wellness, LLC, a Kansas limited liability company. *Id.* at 3 (Compl. ¶ 9).

---

[1] The fact summary below is derived from plaintiffs' Complaint and viewed in the light most favorable to plaintiffs—the standard employed by the court in its Memorandum & Order ruling on defendants' motion to dismiss.

KSBN and Adventist required plaintiffs to have a collaborative practice agreement (a "CPA") with a private physician as a condition to attending births at Shawnee Mission Medical Center Health ("SMMCH"). *Id.* at 5 (Compl. ¶ 22). Sometime in 2016, plaintiffs entered into a CPA with Dr. Janetta Proverbs, also a named defendant in this case, permitting plaintiffs delivery privileges at SMMCH. *Id.* (Compl. ¶¶ 21–25). Dr. Proverbs informed plaintiffs that she would terminate the CPA, effective February 2018. *Id.* (Compl. ¶¶ 23–25). Plaintiffs then sought CPAs with other OB/GYNs—the Laborists—employed at SMMCH, a hospital owned and operated by Adventist. *Id.* at 5 (Compl. ¶¶ 26–30). Plaintiffs allege that Adventist maintained internal policies with certain requirements and limitations that made it difficult for physicians to agree to enter into a CPA with nurse-midwives, and "refused to create a policy or directive encouraging or mandating the Laborists—or any other physicians—[to] grant a CPA." *Id.* at 6, 24 (Compl. ¶¶ 31–32, 131). And, Adventist and the Laborists declined to enter into a new CPA with plaintiffs when requested to do so. *Id.* at 6 (Compl. ¶¶ 29, 30).

Under regulations adopted by KSBN, APRNs are authorized to "make independent decisions about advanced practice nursing needs of families, patients, and clients." Kan. Admin. Regs. § 60-11-101(a). APRNs also may make "medical decisions *based on the authorization for collaborative practice with one or more physicians*." *Id.* (emphasis added).[2] This regulation defines "Authorization for collaborative practice" to mean "that an APRN is authorized to develop and manage the medical plan of care for patients or clients based upon an agreement developed jointly and signed by the APRN and one or more physicians." Kan. Admin. Regs. § 60-11-101(b).

---

[2] Kan. Admin. Regs. § 60-11-105 provides additional detail about the functions of APRNs, like plaintiffs, who practice as nurse-midwives. It similarly provides in pertinent part that such APRNs may "develop and manage the medical plan of care for patients or clients, based on the authorization for collaborative practice." Kan. Admin. Regs. § 60-11-105(b).

Plaintiffs argue that Kan. Admin. Regs. § 60-11-101 delegates to private physicians the "authority to define each, individual APRN's legal privileges." Doc. 1 at 7–10 (Compl. ¶¶ 37–43, 57–59). Plaintiffs contend that the Kansas Legislature delegated authority to KSBN to enact regulations establishing the roles of APRNs "consistent with nursing practice specialties recognized by the nursing profession." *Id.* And, by promulgating Kan. Admin. Regs. § 60-11-101, KSBN has further delegated that legislative power to private physicians such as the Laborists, *i.e.*, by allowing APRNs and physicians to enter into collaborative practice agreements that expand an APRN's role to include making medical decisions. *Id.*

Without a CPA with a physician employed or holding privileges at SMMCH, plaintiffs could not attend the deliveries of their clients at SMMCH, causing clients to leave plaintiffs' practice. *Id.* at 16 (Compl. ¶¶ 33–34). In plaintiffs' view, because a CPA is required to make medical decisions or prescribe drugs or, more specifically, have admitting privileges at SMMCH, they must have a CPA to "practice[e] [in] their chosen profession." Doc. 1 at 5, 13, 23 (Compl. ¶¶ 22, 73, 130); *see also* Doc. 36 at 2 ("Plaintiffs alleged that [KSBN] and Adventist required Plaintiffs . . . to obtain a [CPA] in order to practice, including at Adventist's facility."). And, plaintiffs allege that Adventist and the Laborists' refusal to enter into a new CPA with them interfered with their "property and liberty interest[s] in practicing their chose[n] profession" as well as their "liberty interest in entering [into] private contracts" with their own clients, without providing required due process protections. Doc. 1 at 5 (Comp. ¶¶ 17–18). So, plaintiffs assert a 42 U.S.C. § 1983 claim against Adventist and the Laborists arguing that defendants "knowingly, willfully[,] and maliciously deprived [p]laintiffs of their liberty and property interests in practicing in their chosen profession and in their freedom to contract." Doc. 1 at 23 (Compl. ¶ 130).

3

On August 1, 2019, the court granted Adventist and the Laborists' Motion to Dismiss. Doc. 35. The court concluded plaintiffs cannot advance a § 1983 claim because the Laborists and Adventist are not state actors. Doc. 35 at 11. Plaintiffs have moved for reconsideration, asking the court to recall the dismissal of their claims against Adventist and the Laborists.

## II.     Legal Standard

Plaintiffs' Motion for Reconsideration invokes D. Kan. Rule 7.3(a). Because plaintiffs seek reconsideration of a dispositive order, this rule directed them to file their motion under Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60. But, neither one of these Rules apply directly here because the court hasn't entered a judgment and "[n]either the Federal Rules of Civil Procedure nor this court's local rules recognize a motion for reconsideration when it contemplates a dispositive order" without a judgment. *Ferluga v. Eickhoff*, 236 F.R.D. 546, 548–49 (D. Kan. 2006). But, the court nonetheless may consider a motion for reconsideration "based on the court's inherent power to review its interlocutory orders." *Id.*; *see also* Fed. R. Civ. P. 54(b) (explaining an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action [for] any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"). And, in doing so, the court applies the legal standards governing a Rule 59(e) or D. Kan. Rule 7.3(b) motion, which are essentially the same. *Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 748 F. Supp. 2d 1261, 1264 (D. Kan. 2010); *Ferluga*, 236 F.R.D. at 549.

Rule 59(e) allows a court to alter or amend a judgment "only if the moving party can establish (1) an intervening change in controlling law; (2) the availability of new evidence that could not have been obtained previously through the exercise of due diligence; or (3) the need to

correct clear error or prevent manifest injustice." *Wilkins v. Packerware Corp.*, 238 F.R.D. 256, 263 (D. Kan. 2006), *aff'd* 260 F. App'x 98 (10th Cir. 2008); *see also* D. Kan. Rule 7.3(b) (explaining reconsideration of non-dispositive orders must be based on "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error or prevent manifest injustice"). So, "[a] motion to reconsider is available when the court has misapprehended the facts, a party's position, or the controlling law, but it is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Coffeyville Res. Refining*, 748 F. Supp. 2d at 1264 (citing *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

When reviewing a district court's decision to deny a motion to reconsider under the abuse of discretion standard, the Tenth Circuit has described a "clear error of judgment" to mean a district court's decision that was "arbitrary, capricious, whimsical, or manifestly unreasonable . . . . " *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235–36 (10th Cir. 2001) (internal quotation marks and citations omitted). The Tenth Circuit has not defined "manifest injustice" in the Rule 59(e) context, but our court "has described the term to mean direct, obvious, and observable error." *Hadley v. Hays Med. Ctr.*, No. 14-1055-KHV, 2017 WL 748129, at *2 (D. Kan. Feb. 27, 2017) (internal quotation marks and citations omitted).

Plaintiffs move the court to reconsider its Memorandum and Order dismissing their claims against Adventist and the Laborists, arguing that: (1) the court misapprehended plaintiffs' claims, (2) the court's Order "contains explicit and implicit contradictions of law and fact," and (3) the court's dismissal "would work a manifest injustice." Doc. 36 at 1.

**III.     Analysis**

Plaintiffs allege Adventist and the Laborists violated their "constitutionally protected rights under color of law" when they declined to enter into a CPA with plaintiffs after Dr. Proverbs had terminated her contract with them. Doc. 36 at 1. Plaintiffs assert this decision to decline affected their "protected liberty and property interest in practicing in a lawful profession" and their "interests in forming contracts." *Id.* at 1–2. Plaintiffs contend Adventist and the Laborists were state actors engaging in "legislative acts" by denying them a CPA because KSBN's collaborative practice regulation delegates to private physicians the authority to define which medical decisions APRNs can make or other privileges APRNs enjoy when they reach an agreement with a private physician. *Id.* Plaintiffs first challenge the court's dismissal Order arguing the court made legal conclusions and factual findings that are contradictory. Then, plaintiffs argue the court misapprehended their claims in a manner that must be corrected to prevent manifest injustice.

**A. Contradictory Legal Conclusions and Factual Findings**

Plaintiffs argue the court made legal conclusions and factual findings about their ability to practice in their chosen profession that were contradictory. Plaintiffs contend the court's Order determined plaintiffs must—by law—collaborate with a physician in order to practice in their chosen profession, while also concluding plaintiffs continued to hold active APRN licenses that allow them to practice as nurse-midwives in Kansas even after their CPA was terminated. Doc. 36 at 2, 5–7.

### i. Plaintiffs' Contention that the Court Held Plaintiffs Must, by Law, Collaborate with a Physician (Challenging Court's Order, Doc. 35 at 1–2)

Plaintiffs argue that the court held a CPA was a mandatory requirement to practice as an APRN. They even cite a particular passage of the court's Order as the place where the court reached this conclusion. *See* Doc. 36 at 2, 6 (plaintiffs' motion to reconsider citing pages 1 and 2 of the court's Order). But, the court never drew the legal conclusion plaintiffs attribute to it. Instead, the cited passage of the Order merely was summarizing plaintiffs' allegations. *See* Doc. 35 at 1–2 (court's Order citing plaintiffs' Complaint, where plaintiffs cited to Kan. Admin. Regs. § 60-11-101, in the court's description of the factual background as alleged by plaintiffs for purposes of the Order). Plaintiffs' Complaint continued by alleging that Kansas delegates the authority to regulate APRNs to private physicians. And, plaintiffs admit they alleged a CPA was required "in order to practice." Doc. 36 at 2. In reality, the court never analyzed the applicable statutes and regulations or held that plaintiffs' APRN licenses were entirely dependent on the existence of a CPA.

The applicable regulation cited by plaintiffs in their Complaint—Kan. Admin. Regs. § 60-11-101(a)—provides: "Each APRN shall be authorized to make *independent decisions* about advanced practice nursing needs of families, patients, and clients and *medical decisions* based on the authorization for collaborative practice with one or more physicians." *Id.* (emphasis added). Under the regulation, a CPA is a jointly developed agreement between the APRN and the physician where the two parties agree how they will collaborate to manage the medical plan of care for patients. Kan. Admin. Regs. § 60-11-101(b). So, APRNs must collaborate with a physician to (a) perform certain acts that involve making medical decisions; or (b) have prescribing authority. *See* Kan. Admin. Regs. § 60-11-101(a); *see also* Kan. Stat. Ann. § 65-

1130(d) (providing APRNs "*may* prescribe drugs *pursuant to a written protocol as authorized by a responsible physician*" provided that "[i]n no case shall the scope of authority of the advanced practice registered nurse exceed the normal and customary practice of the responsible physician"). Contrary to plaintiffs' motion, the court never held that plaintiffs' APRN licenses were invalidated the moment plaintiffs lost their CPA with Dr. Proverbs. Indeed, the regulation authorizes APRNs to make certain *independent decisions*. Plaintiffs never allege that anyone took any action against their APRN licenses. Instead, they argue they are owed constitutional protections when a physician or hospital declines to work with them or grant them the expanded authority permitted by regulation.

In short, plaintiffs' argument misinterpreted the court's summary of their factual allegations as a legal holding. It is not persuasive.

### ii. Plaintiffs' Contention that the Court Incorrectly Concluded Plaintiffs Continued to Hold ARPN Licenses and Remained Authorized to Practice as APRNs in Kansas (Challenging Court's Order, Doc. 35 at 8)

Plaintiffs' next argument is tied to their incorrect belief that the court held a CPA is required to be an APRN, as discussed above. Plaintiffs take issue with the court's finding that "plaintiffs continued to hold APRN licenses and remained legally authorized to seek midwifery practice opportunities in Kansas," arguing this conclusion contradicts with the court's purported holding. Doc. 35 at 8. But, again, this finding comports with the Kansas regulation. Indeed, it comes directly from plaintiffs' Complaint—where plaintiffs allege Julie Gorenc and Kara Winkler are licensed APRNs functioning in the role of certified nurse-midwives. Doc. 35 at 1 (citing Doc. 1 at 3 (Compl. ¶¶ 7–8)). Under Kan. Admin. Regs. § 60-11-102, the role of "nurse-midwife" is one of the roles the KSBN established for APRNs. *See also* Kan. Stat. Ann. § 65-1130(c)(1), (c)(3) (the board of nursing "shall adopt rules and regulations applicable to

[APRNs]" which "[e]stablish roles . . . of [APRNs] which are consistent with nursing practice specialties recognized by the nursing profession" and which "define the role of [APRNs] and establish limitations and restrictions on such role"); Kan. Admin. Regs. § 60-11-105 (describing acts that APRNs functioning in the role of nurse-midwife are authorized to take). And, plaintiffs never explain how the loss of a CPA with one particular physician—though it terminated their contractual agreement with a physician employed at SMMCH and ended their associated admitting privileges at that hospital—stripped them of their APRN licenses or their "right to practice in their chosen profession." Plaintiffs do allege that a CPA was required to practice in the manner they desired—*i.e.*, in a manner that allows them to attend births at SMMCH with whatever expanded authority agreement they desired to reach with Adventist and the Laborists. But, plaintiffs never alleged that their nursing licenses are at risk, that they were deprived entirely of their ability to practice as APRNs without a CPA, or that they were deprived of their ability to enter into a CPA with other physicians when their existing agreement ended. Nor did the court ever make such a finding. Instead, as the court explicitly explained, plaintiffs were free to seek employment elsewhere as licensed APRNs. Doc. 35 at 8. They also remained free to form a collaborative practice agreement with another physician. *Cf. Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 575 (1972) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.").

To be clear—the court's summary of these applicable statutes and regulations does not conclude that plaintiffs may take any actions outside the scope of permissible authority conferred by the Kansas Legislature and KSBN to APRNs functioning as nurse-midwives. Plaintiffs' brief supporting their motion to reconsider asserts that they "will, upon an order of the Court granting

9

this motion and finding that they retain their legal right to practice in their chosen profession without a CPA, terminate their current CPA and practice without one." Doc. 36 at 3; *see also id.* at 6–7 (incorrectly claiming the court determined they have exactly the same rights with or without a CPA). As the court discussed in detail in a separate Memorandum and Order granting the motion to dismiss by a different defendant—JoAnn Klaassen, in her official capacity as President of KSBN—restrictions on plaintiffs' ability to take certain actions unless they have a CPA with a licensed physician are rational limitations on their APRN licenses. Doc. 38 at 32–44. So, despite plaintiffs' arguments that they, as nurses, are "objectively equal" to physicians and should not have to answer to a physician to take actions they believe they are qualified to take on their own, *see* Doc. 36 at 4, their APRN licenses do not grant them authority to take such actions without a CPA. Instead, if plaintiffs believe they should be able to make medical decisions or prescribe drugs without a CPA, they may lobby the Kansas Legislature to expand their authority. The decision by Adventist and the Laborists not to enter into a CPA with plaintiffs did not make it "unlawful for [p]laintiffs to earn a living as midwives." See Doc. 36 at 7. And while they no longer could practice at this particular hospital without a CPA conferring certain authority on them, they remained able to practice as APRNs within the regulatory authority granted their profession and remained able to pursue a CPA elsewhere.

In sum, the court's previous Order, Doc. 35, did not make contradictory legal conclusions and factual findings.

### B. Plaintiffs' Argument that the Court Misapprehended Plaintiffs' Claims and that the Court Must Recall the Dismissal to Prevent Manifest Injustice

Other issues raised by plaintiffs' reconsideration motion challenge the court's holding granting the motion to dismiss because Adventist and the Laborists are not state actors. Their

10

reconsideration motion attacks this holding, arguing the court misapprehended their argument and must revise its ruling to "correct clear error and prevent a manifest injustice." Doc. 36 at 5.

Plaintiffs compare the court's holding that a private hospital and its employees are not state actors to *Dred Scott v. Sandford*, 60 U.S. 393 (1857) and *Plessy v. Ferguson*, 163 U.S. 537 (1896).[3] Doc. 36 at 4–6. In drawing this comparison, plaintiffs take issue with an analogy the court used to illustrate how plaintiffs securing APRN licenses does not mandate any hospital or physician to offer them a CPA. The court compared this relationship with other forms of state licenses, noting that a person may secure a driver's license, but this does not require a car dealership to offer the licensed driver a lease agreement for a desired car. If the car dealership declines to offer a lease, the driver still maintains her driver's license. And, likewise, when a physician decides not to enter into a CPA, the nurse still maintains her APRN license. Doc. 35 at 9.

Plaintiffs assert the court's analogy misapprehended claims by two licensed professionals. Doc. 36 at 5. And, they contend, the court has considered their claims "under an inappropriate and dismissive standard," and "infantilized" them by using this analogy to "justify Kansas' restriction of [their] rights on a basis which the [c]ourt recognizes is not rationally related to any legitimate state interest." *Id.* The court's holding in no way minimizes the licensed, professional standing of plaintiffs. Instead, the analogy merely demonstrates two important aspects of our system of laws. First, private parties are free to contract with one

---

[3] The court is not impressed by plaintiffs' argument that its ruling reinvigorates the holdings in *Dred Scott* and *Plessy*. The former held that African descendants imported in to the United States and sold as slaves "were not included nor intended to be included under the word 'citizens' in the [C]onstitution, and could not claim any of the rights and privileges which that instrument provided for and secured to citizens of the United States . . . ." *Plessy*, 163 U.S. at 559 (Harlan, J., dissenting) (comparing the *Plessy* decision to *Dred Scott*). The latter held that Louisiana, consistent with the Thirteenth and Fourteenth Amendments to the Constitution, could require citizens of different races to ride in separate railway cars. *Id.* at 548–52. The difference between the legislative decisions at issue in those cases and the ones at issue here are plainly evident.

11

another. *See Steele v. Drummond*, 275 U.S. 199, 205 (1927) ("[I]t is a matter of great public concern that freedom to contract be not lightly interfered with."); *Morta v. Korea Ins. Corp.*, 840 F.2d 1452 (9th Cir. 1988) ("[P]eople have the right, within the scope of what is lawful, to fix their legal relationships by private agreement . . . ."); *Centrinex, LLC v. Darkstar Group, Ltd.*, No. 12-2300-SAC, 2012 WL 5361507, at *2 (D. Kan. Oct. 31, 2012) (explaining freedom of contract principles control unless the agreement would violate public policy or is unreasonable).[4] They enjoy a co-equal right, however, not to contract with others. Second, contractual decisions made by CPAs between a physician and an APRN do not amount to state action taken under color of state law for APRN licensing requirements. *See* Doc. 35 at 6–11.

The Kansas regulations for collaborative practice describe CPAs as "an agreement developed jointly and signed by the APRN and one or more physicians." Kan. Admin. Regs. § 60-11-101(b). It is an optional agreement and a two-way street. No APRN is forced to agree to a CPA with a physician against her will; and vice versa. Instead, both parties are free to develop a contractual agreement that suits their needs, within the statutory and regulatory provisions governing their respective licenses and the authorizations that come with them. And, in the Order on Adventist and the Laborists' motion to dismiss, Doc. 35, the court did not reach the question whether Kansas's collaborative practice regulations restricting an APRN's authority to take certain actions unless a CPA is in place are rationally related to any legitimate state interest, as plaintiffs contend the court already decided. *See* Doc. 36 at 5 (claiming the court recognized the collaborative practice regulations are not "rationally related to any legitimate state interest"

---

[4] In the situation here, KSBN, through the authority delegated to it by the Kansas Legislature, explicitly has provided for CPAs by agreement, indicating CPAs are in the public's interest and do not violate public policy.

but still found a way to "justify Kansas' restriction of Plaintiffs' rights").[5] Instead, the court merely considered whether Adventist and the Laborists were state actors—a requirement of a viable claim under 42 U.S.C. § 1983. *See* Doc. 35 at 6–11.

Plaintiffs reveal the crux of their reconsideration motion—and indeed the equal protection argument advanced by their Complaint—at page four of their motion. There, plaintiffs argue:

> The Court infantilized Plaintiffs, reducing Plaintiffs' claims from those of respected professionals who have Constitutionally protected rights to those of a whiny, "entitled" teenagers who believe life owes them unearned privileges. In the process, the Court demonstrates the very nature of the equal protection claim that Plaintiffs allege was violated: nurses and midwives, *despite being objectively equal to physicians* within their scope of practice, are still "considered as a subordinate and inferior class of beings, who had been subjugated by the dominant [profession], and, whether emancipated or not, yet remained subject to their authority, and had no rights or privileges but such as those who held the power and the government might choose to grant them."

Doc. 36 at 4 (emphasis added) (brackets in plaintiffs' motion) (quoting *Dred Scott*, 60 U.S. at 404–05 (as quoted in *Plessy*, 163 U.S. at 559–60)). The court takes no position whether plaintiffs—as nurses and midwives—are "objectively equal to physicians within their scope of practice." *Id.* Deciding whether Kansas-licensed nurse midwives are equal, superior, or inferior to physicians is a decision assigned by our federalist system to the Kansas Legislature and licensure boards its has chosen to create. The court finds no legal authority empowering the federal courts to interfere with their decisions. Certainly, plaintiffs cite none.

Plaintiffs analogize their situation to a commercial truck driver, who has her own vehicle and independent business, but then is required to get approval from a multi-state competitor for

---

[5] In a later Order deciding JoAnn Klaassen's motion to dismiss, the court did reach the question whether the Kansas collaborative practice regulations are rationally related to a legitimate state interest. The court held that the regulations satisfy the rational basis test and plaintiffs thus failed to state a plausible claim against defendant JoAnn Klaassen. *See* Doc. 38 at 32–44.

her independent commercial license to remain active. Plaintiffs contend the collaborative practice regulations allow their competitors to control their licenses and ability to practice as nurse-midwives. Doc. 36 at 6. And so, plaintiffs argue, the court must reconsider whether Adventist and the Laborists exercised state action when they "deprive[d] them of the ability to earn a living in a lawful occupation" and rendered their APRN licenses "worthless" by declining to enter into a CPA granting them privileges at SMMCH. *Id.* Plaintiffs argue the collaborative practice regulations grant physicians state legislative power and allow them to use that power impermissibly for personal gain—*i.e.*, physicians advance their own interests as competitors of plaintiffs by not agreeing to collaborate with plaintiffs. *Id.* at 2–3.

But, plaintiffs' analogy is not aligned with the situation at hand. Plaintiffs' APRN licenses remained active and their license status did not depend on a competitor. Plaintiffs depended on Dr. Proverbs for their admitting privileges at SMMCH—but not for their ability to practice as APRNs. Imagine a licensed commercial truck driver operating an independent business who elects to enter into an agreement with a trucking competitor. Under this agreement, the licensed commercial truck driver will assist that competitor by serving routes the competitor had concluded he couldn't handle on his own. And, under that contractual relationship, the commercial truck driver may receive authority to take certain actions he could not take on its own, *e.g.*, use certain trucks or facilities that the competitor has been authorized to use. But, this contractual relationship doesn't mean that the competitor is regulating a substantial portion of truck drivers who hold commercial licenses. Instead, the competitor's decisions only affect those drivers who have agreed by contract to the terms of the mutually agreed collaboration. If the competitor chooses to end that contractual relationship in accordance with the contract terms, the commercial truck driver can seek an agreement with another trucking

14

business on similar or different terms. And just because the commercial truck driver isn't permitted to continue driving the same routes or access the same facilities he enjoyed during the term of the earlier contractual relationship does not mean the commercial truck driver is precluded from operating his business. Instead, the commercial license issued by the State of Kansas remains in effect just as plaintiffs' APRN licenses here remained in effect.

Again, plaintiffs misinterpreted the court's summary of facts as holding they are "prohibited by law from practicing a lawful profession and earning a living" without a CPA. Doc. 36 at 5. Their former CPA with a physician allowed them certain privileges with one physician and the hospital where she held admitting privileges. For whatever reason, the physician chose to end that contractual relationship. But, the Laborists and Adventist were not required to reach the same agreement with plaintiffs, nor were they acting under color of state law when they chose not to contract with plaintiffs. Plaintiffs have not demonstrated any clear error or manifest injustice in the court's state actor analysis.

Moreover, plaintiffs reassert arguments the court has already considered. Plaintiffs argue that "no party submitted any argument that [p]laintiffs were still authorized to practice without a CPA." Doc. 36 at 5–6. This is simply wrong. Defendants argued that plaintiffs should lobby the legislature if they want to eliminate restrictions on plaintiffs' ability to make medical decisions unless a CPA is in place or want the state to require physicians to grant them a CPA. Doc. 16 at 1–3. Defendants specifically argued that plaintiffs

> do not contend that the refusal of the Adventist Defendants to enter into a CPA with them inhibits their midwifery practice in any other facility in Kansas (much less in any other State). The ability to practice in other facilities would certainly underscore that any CPA between a physician and the Plaintiffs or any other APRN is the result of discretion and independent medical judgment, as opposed to a state function.

*Id.* at 16.

Plaintiffs equate the ability to make medical decisions or have admitting privileges at SMMCH with the ability to practice in their chosen profession. Without a CPA with Adventist or the Laborists, plaintiffs contend they "had no rights" and could not practice in their chosen profession. Doc. 36 at 6. But, noticeably missing from plaintiffs' motion is any citation to persuasive or binding authority suggesting the court's determination that defendants were not state actors was wrong.[6] Plaintiffs are rehashing arguments they already made, and that the court already considered. *See* Doc. 35 at 6–8 (explaining that plaintiffs continued to hold APRN licenses despite losing delivery privileges at a particular facility—SMMCH—and that a private person is not converted into a state actor by creating internal policies or supervising APRNs at its facility, which are not functions exclusively reserved to the states, even where the acts are in accordance with authority granted under a state statute); *id.* at 8–11 (explaining merely invoking state legal procedures does not establish a symbiotic relationship and plaintiffs have not shown

---

[6] Other than *Plessy* and *Dred Scott,* plaintiffs cite only one other case in their motion to reconsider directed at the court's state actor analysis. Plaintiffs cite a footnote in the concurring opinion in *United States v. Morgan*, 635 F. App'x 423, 465 n.5 (10th Cir. 2015), for the proposition that the "use of state law to advance private interests ahead of legitimate government interests is itself a recognized wrong." Doc. 36 at 2–3. Plaintiffs contend the court cited "no authority for the proposition that an actor who abuses state power for personal gain cannot be said to [be] a state actor for purposes of [a §1983] claim." *Id.* at 2. Plaintiffs contend Adventist and the Laborists were state actors who abused state power (the collaborative practice regulation) for personal gain when they declined to agree to a CPA, which is in the government's interest, with plaintiffs.

But, *Morgan* is inapposite. *Morgan* was a criminal case involving a state legislator who took bribes to introduce and pass a certain bill. *Morgan*, 635 F. App'x at 425–27, 465. The government appealed his light sentence where, at the sentencing, the district court had taken into account the fact that no one had complained about the legistlation. *Id.* at 443, 465. The footnote in *Morgan* cited by plaintiffs discusses a case where a former judge was convicted of conspiracy to obstruct the administration of justice and to defraud the United States. *Id*. at 465 n.5. The former judge challenged his conviction, arguing the judicial decisions he made as part of the conspiracy were "legally sound." *Id.* The *Morgan* concurring opinion explains that when a public official takes government action for personal gain it is inexcusable, even if the action—if it had been taken without the associated bribe or conspiracy—may have been sound. *Id*. at 465 & n.5.

The *Morgan* case does not persuade the court that Adventist and the Laborists—a private hospital and private physicians—were state actors abusing state power for personal gain. Plaintiffs ignore all of the cases the court cited in its analysis to reach the conclusion that Adventist and the Laborists are not state actors, Doc. 35 at 6–11. As the court previously explained, under certain circumstances a private person could be considered a state actor. But, not all actions taken with authority granted by statute convert a person into a state actor. Plaintiffs did not meet their burden to show state action. Nor do plaintiffs now rely on any legal authority that calls into question the cases cited by the court.

how Adventist and the Laborists' refusal to enter into a CPA establishes the requirements of interdependent relationship and actions that benefit the state).

To be sure, the collaborative practice regulations allow an APRN to make certain decisions, in collaboration with a licensed physician, that they could not make otherwise. And, when Adventist and the Laborists declined to enter into a CPA with plaintiffs, plaintiffs did not secure the desired privileges *at SMMCH*. But, they were not prohibited from seeking those privileges elsewhere. And, their APRN licenses remained intact. As previously explained, Adventist and the Laborists were not acting under color of state law when they declined to enter into a CPA merely because applicable regulations permitted CPAs by joint agreement. Instead, these resemble decisions made in a variety of professional settings where licensed professionals occupy a supervisory role over employees or independent contractors. Plaintiffs failed to meet their burden to establish Adventist and the Laborists' actions rose to the level of state action.

Plaintiffs' final argument challenges KSBN's promulgation of the collaborative practice regulations. *See* Doc. 36 at 8 (arguing it "is a manifest injustice to allow a state agency[—KSBN—] to knowingly and openly pursue a policy that is contrary to that of the state legislature"). This argument exceeds the scope of the Order at issue here. The challenged Order never addressed plaintiffs' claims against KSBN. Instead, it dismissed the claims against other defendants.

In sum, plaintiffs have not asserted any persuasive challenges to the court's conclusion that Adventist and the Laborists were not state actors. Nor did the court misapprehend plaintiffs' claims or arguments. Plaintiffs' motion seeks to "revisit issues already addressed," which is not permitted. *Ferluga*, 236 F.R.D. at 549 (citing *Servants of Paraclete*, 204 F.3d at 1012); *see also Comeau v. Rupp*, 810 F. Supp. 1172, 1175 (D. Kan. 1992) (explaining that a party seeking

reconsideration may not revisit issues already addressed). For all the reasons explained above, the court denies plaintiffs' Motion to Reconsider.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to Reconsider (Doc. 36) is denied.

**IT IS SO ORDERED.**

**Dated this 23rd day of March, 2020, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**